Bietry v. City of New Orleans.

## No. 2388.—JOHN BIETRY v. CITY OF NEW ORLEANS.

Contracts legally entered into have the effect of laws on the parties who have formed them.

An agreement made between the city of New Orleans on the one side and a contractor on the other, whereby the city reserves the right to discontinue and annul the contract, whenever it shall appear that the contractor has failed to comply with the terms and conditions of the contract, may be annulled and set aside by the city without putting the contracting party in default, if it be shown that he has failed to comply with the terms and conditions imposed upon him by the contract.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley*, J. *J. B. Cotton*, for plaintiff and appellee. *George S. Lacey*, City Attorney, for defendant and appellant.

LUDELING, C. J. The plaintiff alleges that he entered into three contracts with the city of New Orleans to clean and repair certain streets in the fourth, fifth and sixth wards of the city (comprising the whole of the second district) for three years from the first of September, 1866, agreeably to the specifications contained in the agreement; that he was to receive, per annum, for the fourth ward $6600; for the fifth ward $7550, and for the sixth ward $6740, and that by reason of the violation of the contract by the city the plaintiff "abandoned the work" on the eighteenth day of February, 1867. It is further alleged that at the time this suit was commenced, there was due to the plaintiff by the city of New Orleans the sum of $3953 50, being made up of the amount then due under the contracts, and the ten per centum retained by the city, on payments already made, $5831 21 on account of loss on mules, carts, etc., purchased by petitioner to carry on the contracts, and $24,000 damages, occasioned by loss of profits, which plaintiff would have realized.

The answer admits the contracts, but represents that the plaintiff failed in every respect to comply with the terms and specifications thereof; that the contractor was executing the contracts in a manner which dissatisfied the Council, and that in conformity with one of the stipulations of the contracts the Council annulled the agreement without indemnity.

There was judgment in favor of the plaintiff for $26,497 14, and the city has appealed.

The evidence shows that on or about the eighteenth of February a demand of the sum, alleged to be due for work done, was made on the Mayor of the city by a notary, for the purpose of putting the city *in mora*, and that the city refusing to pay, the plaintiff abandoned his contracts. The evidence further shows that shortly thereafter the City Council annulled the contracts with the petitioner, on the ground that he had failed to execute the contracts in accordance with the terms and specifications of said contracts. It becomes necessary, therefore,

to determine the question of fact, did the plaintiff execute the contracts in accordance with the terms and specifications thereof?

There is a great deal of conflicting testimony in the case; but after a careful examination of the evidence, we are convinced that the weight of evidence preponderates in favor of the defendant.

L. H. Pilié, a witness for plaintiff, says: "I have been employed in the city surveyor's department for about thirty years, either as deputy or chief. In that capacity I have had daily communication with the contractors for that department, and am, therefore, able to say when a contractor does his duty under his contract."

Question. "As surveyor, then, of the city of New Orleans, were you satisfied with the condition in which he kept these streets?"

Answer. "Sometimes I was."

Question. "I mean at the time this rainy spell set in?"

Answer. "No; as I said already, the unpaved streets back there were in bad order."

James McClosky, a witness for defendant, says: "I was chairman of the Committee of Streets and Landings of the Upper Board. It was my duty as chairman to examine the condition of the streets and the work of the contractors, to see if they performed their duties. * * I went two or three times over this district when I heard the complaints, and the time when I made the closest examination was when I went with Pilié and McKnight. There was, at the time I made these examinations, complaints of the work of all the contractors from all parts of the city. These wards, the fourth, fifth and sixth, were all in a very bad condition, and particularly the back parts of them. The gutters were filled up with mud; the middle of the streets were in big holes; the gutters of some of the paved streets looked as though they had not been touched for a long time. * * Some of the streets we had to go round—driver said we could not go through. The general appearance of the streets were bad. They looked as if they had not been worked for a long time. In some of the paved streets there were piles of dirt that had been taken out of the gutters and had not been removed, and grass was growing on them. I reported these facts to the Council, and refused to sign the certificates for the work done. * * It is within my knowledge that the contract of Bietry with the city was canceled by the Common Council, because the contract was not well done."

H. T. Sturken says he was a member of the Committee on Streets and Landings when Bietry had the contracts to clean the streets, etc. Says he was a member of the Common Council when the contract was annulled, and that he voted to annul it. He testifies that "there was at that time a general complaint from all parts of the city as to the

condition of the back portion of the city, and the manner in which the contracts were carried out."

J. B. Prague testified that he was chairman of the Committee of Streets and Landings of the Board of Assistant Aldermen; that the Committee on Streets and Landings refused to approve the certificates for work because the contractor had failed to comply with the terms of his contract, and *that they ascertained the fact by examination*, and that he reported the facts after examination to the Common Council. He states that some objections were made to the report in the Council, and the matter was proposed to be referred back to the Committee on Streets and Landings, but he moved that the matter be referred to a special committee to be appointed by the board, which was done. This committee was composed of Messrs. Kaiser, Montamat, Sturken and himself; that the committee reported that the streets were in a bad condition, etc., and the report was approved by the Council. That about that time there was a change of administration, and a new Committee of Streets and Landings were appointed, who refused to approve the certificates, and the City Council annulled the contracts on account of the failure of Bietry to perform the duties imposed by the stipulations of the contracts.

Under this state of facts, we think the City Council had the right to annul the contract, without putting the plaintiff in default, and without indemnity, under the following clause, which forms a part of the contracts between the parties, to-wit:

"In all contracts adjudicated by the Controller, one of the conditions shall be, (to be stated by him at the time of the adjudication, and *inserted in the specifications*, it any be published), that in case of failure by the contractor to begin or finish the work within the period fixed, or *in case the Council be dissatisfied with the manner in which the work is being executed*, the Council shall have the right to annul the said contract without putting the contractor in default, and without applying to a court of justice to annul the same, and WITHOUT INDEMNITY; and, also, that in case the contractor shall at any time abandon any work or undertaking, or not finish and complete the same in conformity with his contract, such contractor shall forfeit all claim he may have for any work or undertaking done by him up to the date of such abandonment, and such sum as may have been deposited in the treasury by such contractor, *and the city shall be hereby discharged and released from any and all liability therefor;* and that in case such work or undertaking be resold, the contractor and his surety or securities shall be held and bound *in solido* to pay unto the city all such loss or difference between the price at which such contractor originally contracted to perform the work or undertaking and the price at which it may be adjudicated at a resale or readjudication."

These stringent provisions were stipulated in view of the public interests, and there is no law which forbids their enforcement, and having assented to them they are the laws unto the parties to the contract. "Agreements legally entered into have the effect of laws on those who have formed them." C. C., article 1895; 14 An. 296; 19 An. 7; C. C. 2113, 2116.

It is therefore ordered and adjudged that the judgment of the district court be avoided and reversed, and that there be judgment in favor of the defendant rejecting the plaintiff's demand, with costs of both courts.

Rehearing refused.