## NEILL, Appellant, v. GATES.

### Division Two, December 12, 1899.

1. **Contract**: TIME LIMIT FOR PERFORMANCE: FORFEITURE. By express provision of a city ordinance the contractor was to complete a certain sewer within ninety days from the time the contract took effect, and by the terms of the contract it was provided that "the work embraced in this contract shall be begun within ten days after the contract takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the city engineer shall direct otherwise in writing) with such force as to secure its full completion within ninety days from the date of its confirmation; the time of beginning, rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified an amount equal to the sum of ten dollars per day for each day thereafter until completion, shall be deducted as liquidated damages for such breach of this contract, from the amount of the final estimate of said work."

    *Held*, that, the work not being completed within the ninety days, and time being the essence of the contract, and material, the tax bills issued in payment of the work done were void, unless they were rendered valid by some subsequent act of the city council.

    *Held*, also, that an ordinance extending the time for the completion of the work, passed after the contract had been forfeited, did not have the effect of vitalizing such forfeited contract.

    *Held*, also, that the penalty for failure to perform was not an amount equal to ten dollars per day for each day after the time limit until completion of the work, to be deducted as liquidated damages from the final estimate of the work, said provision in the contract not being in harmony with the ordinance.

| 152 | 585 |
| 84a | 152 |
| 86a | 352 |
| 86a | 354 |
| 152 | 585 |
| 89a | 161 |
| f 89a | 645 |
| 152 | 585 |
| 91a | 391 |
| 152 | 585 |
| 169 | [1]382 |
| 152 | 5:5 |
| 171 | [1]267 |
| 171 | [1]268 |
| 171 | [1]269 |
| 95a | [1]158 |
| 99a | [3]494 |
| 99a | [2]495 |

2. ———: ———: ———: RATIFICATION. *Held*, also, that the city council by a subsequent ordinance approving the contract in all its terms, did not thereby validate the tax bills issued for the work done, time being the essence of the contract.

3. **Official Duties**: DELEGATION. There is a clear distinction between legislative and ministerial duties; the former can not be delegated, the latter may.

4. ———: ———: CITY COUNCIL. A city council can not, by contract or otherwise, delegate to the city engineer the authority to establish sewers and to provide plans and means for their construction. Nor can it delegate to him the power to terminate a contract for the construction of a sewer.

5. **Contract**: CHANGED BY CITY ORDINANCE: UNCONSTITUTIONAL. A city can not by its ordinance impair the rights of a contractor which existed under contract at the time of the passage of such ordinance.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

KARNES, NEW & KRAUTHOFF and A. F. SMITH for appellant.

(1) The ordinance and contract are not inconsistent. The same tax involved in the Brannock case 70 Mo. App. 535, have been before the Kansas City Court of Appeals three times. McQuiddy v. Vineyard, 60 Mo. App. 610; McQuiddy v. Smith, 67 Mo. App., 205 and McQuiddy v. Gates, 69 Mo. App. 156. The same proceedings have been followed in every case appealed from the Jackson circuit court involving Kansas City tax bills, for the last ten years, and in not one of them was the question raised. Forry v. Ridge, 56 Mo. App. 615; Quest v. Johnson, 58 Mo. App. 54; Dollar Savings Bank v. Ridge, 62 Mo. App. 324; Jaicks v. Sullivan, 128 Mo. 177. (2) The common council has solemnly approved this contract in all its terms. It will be argued that the contract was void because it did not conform to the ordinance in reference to the time when the work should be completed. But the contract does conform to the ordinance. The ordinance says that the

work shall be completed within ninety days from the time the contract shall take effect. So does the contract. But the ordinance does not say what the result of a failure to comply shall be. The contract does. For years it had been the custom of the succeeding boards of aldermen of Kansas City to understand that it was their duty to put a time limit in every ordinance authorizing any public improvement, and to understand that the failure of the contractor was to be punished under a general ordinance, which by the general ordinances of Kansas City was to "be deemed and taken as a part of every contract for the doing of any work," it being provided by the general ordinances that every contract "shall contain a clause that the same is entered into subject to the existing charter and ordinances of the city." People ex rel. v. Supervisors, 17 N. Y. 235; Cooley, Const. Lim. (6 Ed.), p. 216; Sheehan v. Owen, 82 Mo. 458; Marionville to use v. Henson, 65 Mo. App. 405; Johnson v. Duer, 115 Mo. 381.

Ess & Georgen for respondent.

(1) Since the contract provides that "the time of beginning, rate of progress and time of completion being essential conditions of this contract," etc., time was of the essence of this contract by the ordinance and contract. The work was not done in the time provided for, and the tax bill is void. Rose v. Trestrail, 62 Mo. App. 356; McQuiddy v. Brannock, 70 Mo. App. 539 and 542; New England Safe Deposit & Trust Co. v. James, 77 Mo. App. 618; Brown v. Guaranty Trust Co., 128 U. S. 414; Cheney v. Libby, 134 U. S. 77. The common council have the power to fix the time in which a district sewer shall be constructed. (2) The engineer canceled the contract on February 11, 1892, 202 days after the time the contractor was to have completed it; and if we exclude the time the temporary injunction was in force, 131 days after it took effect, this cancellation was valid and ended the contract. Williams v. Railroad, 112 Mo. 487; Chapman v. Railroad, 114 Mo. 549; Dinsmore v. Livingston Co., 60

Mo. 244; Kihlberg v. U. S., 97 U. S. 401; Breitting v. New
Orleans, 24 La. Ann. 21; Easton v. Penn. & Ohio Canal Co.,
13 Oh. 83; Chapman v. Lowell, 4 Cush. 380; Norrington v.
Wright, 115 U. S. 188.    (3)   The time was not extended at
any time during the ninety days next succeeding July 23,
1891.    The contract expired by its own terms, and by ordi-
nance numbered 3247, on October 21, 1891. The injunction
was no excuse for any delay beyond October 21, 1891.   Har-
rison v. Railroad, 74 Mo. 371; McQuiddy v. Brannock, 70
Mo. App. 542.    (4)   Ordinance 5453 is repealed by ordi-
nance 5532, approved December 6, 1893.    This did not ·in
terms or by legal effect revive ordinance 3247.   In order
to revive it or re-enact it, "the same shall be set forth at length
as if it were an original ordinance."   Kansas City Charter,
art. III, sec. 9; Mayor v. Trigg, 46 Mo. 288; State v.
Slaughter, 70 Mo. 487; State v. Grant, 79 Mo. 132; Milne v.
Huber, 3 McLean. 213; Stuman v. State, 21 Tex. 736.

BURGESS, J.—This is an action by plaintiff as assignee
of one James Pryor on six different tax bills aggregating, not
including interest when the suit was begun, the sum of
$2,515.85, and issued by Kansas City against six different
tracts of land owned by defendant, in Sewer District No. 167,
in said city.

On April 18, 1891, an ordinance was passed by Kansas
City establishing Sewer District No. 167, which embraced the
land against which the tax bills involved in this litigation were
issued.    Thereafter on June 10, 1891, an ordinance No. 3247
was passed, authorizing the construction of sewers in said
district,· by which it was provided that "the work should be
completed within ninety days from the time a contract binds
and takes effect," the ordinance reciting that "this work
the Board of Public Works and Common Council deem neces-
sary for sanitary and drainage purposes."

The work was let by contract to said Pryor, and approved
by ordinance of date July 23, 1891.    By its terms work was to

be begun in ten days and to be completed in ninety days from the time the contract was executed. The contract provided that the contractor should not be entitled to any portion of the contract price until the work was completed to the satisfaction of the city engineer, and then only in tax bills. The time in which the work was to be completed expired October 21, 1891. The work was begun, and continued up to August 21, 1891, when Jennie C. Wiltsee and others brought suit against the contractors and Kansas City, and obtained a temporary injunction restraining them from a continuation of the work. The injunction was dissolved on October 31, 1891, but from the time it was granted until its dissolution, no work was done on the sewer.

The contract provides that:

"6.    The work embraced in this contract shall be begun within ten days after this contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing) with such force as to secure its full completion within ninety days from the date of its confirmation; the time of beginning, rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified, an amount equal to the sum of ten dollars per day for each and every day thereafter, until such completion, shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work.

"7.    If, in the opinion of the engineer, the first party, at any time during the progress of the work, is not prosecuting the work with a sufficient force to insure its completion within the time specified in this contract, he may notify the first party to employ such additional force as he deems sufficient; and on the failure of said first party to comply with such notice within three days after its delivery, the engineer may put on

such additional force at the cost of the said first party or he may, at his option, declare the contract annulled.

"And the power is reserved to the city engineer by Kansas City to suspend or annul this contract or to suspend the doing of any work thereunder at any time for any failure on the part of the first party to fulfill the same, or for other good cause; and any action of the city engineer in suspending or annulling this contract, or suspending the doing of the work thereunder, and his decision as to the existence of cause or reason for such annulment or suspension shall be conclusive as to the existence of such cause or reason in any controversy or litigation between the parties hereto, or others claiming under them. And if this contract be so suspended or annulled, the said first party shall not be entitled to anything on account of damages thereby nor shall such annulment or suspension in any wise affect the right of said Kansas City to damages and penalties claimed by it on account of the failure of said first party."

The evidence showed that work amounting to $4,000 at the contract price, was done up to February 11, 1892.

On February 4, 1892, the city engineer, Butts, wrote Pryor, the contractor, and his sureties on his bond as contractor, to proceed with the work in three days, and on his failure to do so he would annul the contract, which he, the engineer in so far as he had power to do so did on February 11, 1892, because Pryor would not proceed with the work, and, so notified the board of public works.

Butts, the engineer, went out of office in May, 1892, and was succeeded by John Donnelly. Pryor paid no attention to the cancellation of his contract by Butts, but continued to work on said sewer with the full knowledge and consent of Donnelly, the successor of Butts, until October 24, 1893, when the Common Council of Kansas City passed an ordinance, No. 5453, to construct a district sewer in Sewer District No. 167, and by it repealed ordinance No. 3247 entitled: "An Ordi-

nance to establish and cause to be constructed district sewer in Sewer District No. 167," approved June 10, 1891.

This last named ordinance makes no reference to the ordinance approving the contract between the city and the contractor, nor does it refer to the contract.

On December 6, 1893, the Common Council of Kansas City passed "an ordinance to repeal an ordinance of Kansas City No. 5453, entitled: 'An ordinance to construct a district sewer in Sewer District No. 167,' approved October 24, 1893."

On March 19, 1894, said council passed an ordiance extending the time for the completion of said work under the original ordinance, No. 3247, to April 1, 1894.

The tax bills were issued March 20, 1894.

At the close of all the evidence the defendant interposed, and the court sustained, a demurrer to the evidence, and in accordance therewith ruled that plaintiff was not entitled to recover, and rendered judgment for defendant.

Plaintiff then filed motion for new trial, which was overruled and he appeals.

By express provision of the ordinance under which the work was done, it was to be completed within ninety days from the time a contract for the work bound and took effect, and by the terms of the contract entered into between Pryor and the city for the work it was provided that "the work embraced in this contract shall be begun within ten days after the contract binds and takes effect, and shall be prosecuted regularly and uninterruptedly thereafter (unless the engineer shall specially direct otherwise in writing) with such force as to secure its full completion within ninety days from the date of its confirmation; the time of beginning, rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work within the time above specified an amount equal to the sum of ten dollars per day for each and every day thereafter, until such completion,

shall be deducted as liquidated damages for such breach of this contract from the amount of the final estimate of said work."

That the work was not completed within the time prescribed by the ordinance and contract under which it was done, is not disputed, and as time was the essence of the contract and material, the tax bills issued for the work and here sued on must be held void (Rose v. Trestrail, 62 Mo. App. 352; McQuiddy v. Brannock, 70 Mo. App. 535; New England Safe Deposit & Trust Co. v. James, 77 Mo. App. 616), unless they are rendered valid by some act of the Common Council of Kansas City.

It is, however, claimed by defendant that the penalty prescribed by the contract for failure to complete the work within the time specified was an amount equal to the sum of ten dollars per day for each and every day thereafter until such completion, to be deducted as liquidated damages for such breach of the contract, from the amount of the final estimate of the work, and that this provision controls, and not that which prescribes the time, and makes it material in which the work was to be done.

But this provision in the contract is not in harmony with section 2, of ordinance No. 3247, under which the contract was let, which requires the work to be completed in ninety days from the time the contract takes effect.

The effect of this provision was to extend the time prescribed by ordinance for the completion of the work to any time that might suit the convenience of the contractor, the only penalty for which was ten dollars per day for every day over that in which the contract was to be completed to be deducted from the amount of the final estimate.

In passing upon a similar provision in a contract for the same kind of work in McQuiddy v. Brannock, *supra*, ELLISON, J., speaking for the court on page 540, said: "It is argued that the provision agreeing upon a forfeiture of $10 for each

day of failure to complete the work within the time is an
implied concession that the work might not be completed
within the time and yet the contract remain binding.   In our
opinion, this provision of the contract can not be applied to
any substantial departure from the contract as to time." The
provision for the extension of time in the contract in this case
is not only a substantial departure from the contract, with
respect thereto, but is not in harmony with the ordinance
under which the contract was let and must yield thereto.

It is further insisted that the common council by ordi-
nance No. 2384, passed July 16, 1891, approved this contract
in all its terms.   Conceding this to be true, the tax bills were
not thereby validated, because by the very terms of the con-
tract it was provided that the work should be prosecuted
regularly and uninterruptedly with such force as to secure
its full completion in ninety days and the city engineer might,
if the force of men in his opinion was insufficient, employ
men at the contractor's expense, or he might annul the con-
tract.

Moreover, it was recited in the ordinance under which the
contract was let, which was a part of the contract, that "this
work the Board of Public Works and Common Council deem
necessary for sanitary and drainage purposes," and also, pro-
vided "that the work should be completed within ninety days
from the time a contract binds and takes effect," thereby show-
ing beyond any question that the time in which the contract
was to be completed was of the essence of the contract and
material thereto.

The contractor ceased work on the contract, and the city
engineer on the fourth day of February, 1892, notified him
that unless work was resumed within three days from the
receipt of the notice with such a force of workmen as to
warrant the completion of his contract within a reasonable
time from that date, his contract would be annulled, and,
on the ninth day of February, 1892, the engineer did attempt

Vol. 152 mo—38

to annul his contract for the reasons stated in said notice, and so notified the Board of Public Works on the eleventh day of February, 1892.

But defendant contends that the power to annul the contract was legislative in its character, devolved upon the city alone, and even if possessed by it could not be delegated to the city engineer, and, that his act in attempting to terminate the contract, as well as the ordinance approving the contract in that regard, were void.

There is a clear distinction between legislative and ministerial powers; the former can not be delegated, the latter may. Thus in Ruggles v. Collier, 43 Mo. loc. cit. 365, it is said: "There is a clear distinction to be observed between legislative and ministerial powers. The former can not be delegated; the latter may. Legislative power implies judgment and discretion upon the part of those who exercise it, and a special confidence and trust upon the part of those who confer it."

So in St. Louis to use of Murphy v. Clemens, 43 Mo. loc. cit. 403, in speaking of the delegation of power to the engineer by the city council, the court observed: "The law requires them to act not only in view of their direct responsibility to those who elected them, but also that they should exercise their united wisdom for the general good of the public. They can not delegate a duty plainly and expressly devolved upon them to the mere discretion, and perhaps caprice, of a single individual." See, also, St. Joseph ex rel. v. Wilshire, 47 Mo. App. 130.

While the city by virtue of the legislative powers conferred upon it by the city charter has the power and authority to establish sewers in the city, and, to provide plans and means for their construction, the city could not delegate such powers, they being legislative, and implying judgment and discretion, to any person or persons, by contract or otherwise. Nor could the city have terminated the contract in question in the absence of a provision in the contract authorizing it to do so. Besides

such power could no more be delegated to the city engineer than could the power to establish the sewer.

It is true the city could have reserved to itself, the right to have terminated the contract at any time, upon failure of the contractor to comply substantially with its terms, but she reserved no such right, but chose in so far as she could do so, to confer the power upon the city engineer.

Defendant relies upon a number of adjudications as sustaining the power of the city engineer to terminate the contract, among which is Chapman v. City of Lowell, 4 Cush. 380. But in that case the city by contract retained control over the work which was to be done under and by the direction and supervision of a committee, both as to quality of the work and time of completion, and the contractor was notified to stop the work, by the city, and not by the committee. Besides there was no question as to the delegation of such power by the city, in the committee to terminate the contract.

Bierty v. New Orleans, 24 La. Ann. 21, is another case relied upon by defendant. But in that case the contract expressly provided that the city might cancel the contract, "in case the council be dissatisfied with the manner in which the work is being done." This as we have said might be done, but in the case at bar no such power was reserved to the city.

Easton v. Canal Co., 13 Ohio, 79; Williams v. Railroad, 112 Mo. 463, and Chapman v. Railroad, 114 Mo. 542, are also relied upon by defendant but the contracts in those cases were between individuals, and private corporations possessing ordinary contractual powers in which were involved no legislative powers, or the delegation thereof, hence not in point.

Our conclusion is that the act of the city engineer in annulling the contract was without authority and void.

We think it clear that it was beyond the power of Kansas City, by ordinance No. 5453, approved October 24, 1893, to impair the rights of plaintiff which existed under the contract at the time of the passage of such ordinance, as such legisla-

Keller v. St. Louis.

tion with respect to such a contract was unconstitutional and. void. [Section 15, article II, Constitution of Missouri.]

The ordinance extending the time for the completion of the work made after the contract had been forfeited did not have the effect of vitalizing a contract which had theretofore been forfeited, nor create a new liability on the part of defendant upon tax bills issued upon such contract.

Our conclusion is that the time within which the contract was to be completed was an essential element in the contract, and, made so by the terms thereof for prudential reasons upon the part of the city, and that, as the contract was not complete within the time prescribed thereby, the tax bills issued for the work, and which form the basis of this action are null and void. We therefore affirm the judgment. GANTT, P. J., con-curs; SHERWOOD, J., absent.