Cynthia S. **RIGGINS** and Thomas K. Riggins, Appellants,

v.

**CITY OF KANSAS CITY, Missouri,** and Loretto Redevelopment Corporation, Inc., Respondents.

No. WD 72764.

Missouri Court of Appeals, Western District.

Aug. 23, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2011.

Application for Transfer Denied Dec. 6, 2011.

Frederick G. Thompson, Kansas City, MO, and Dawn M. Elliott, Overland Park, KS, for appellants.

Heather A. Brown, Kansas City, MO, for respondent City of Kansas City and Jerry Riffel and Dameon Rivers, Kansas City, MO for respondent Loretto Redevelopment.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

This case involves a dispute over the validity of a City of Kansas City, Missouri ("City") ordinance approving an amendment to a Chapter 353 contract between the City and Loretto Redevelopment Corporation ("Loretto"). Cynthia S. Riggins and Thomas K. Riggins (collectively "Riggins") appeal from the trial court's judgment declaring that the City did not act arbitrarily, unreasonably, or unlawfully in adopting the ordinance. We affirm.

## Factual and Procedural History

In 1996, Loretto filed an application proposing a Chapter 353 [1] redevelopment plan to rehabilitate approximately 6-1/2 acres of property located near 39th and Mercier ("Property"). The Property consisted of the former Loretto Academy and two adjacent residential tracts located in Quimby Park. Loretto's proposed plan anticipated four phases of development involving conversion of the Loretto Academy into apartments, condominiums, and event space; development of new apartment and condominium structures; demolition of a dangerous building; and renovation of a residential property. Loretto's proposed plan asked the City to declare the Property blighted, and to rezone the Property as an

---

1. Chapter 353 is "The Urban Redevelopment Corporations Law." All statutory references are to RSMo 2000 as supplemented unless otherwise specified.

Urban Redevelopment District ("URD"), a zoning designation that is designed to encourage redevelopment of underdeveloped or blighted areas. Loretto's proposed plan requested a full abatement of general ad valorem taxes for a 10 year period, followed by a 15 year period of 50% abatement of general ad valorem taxes.[2]

The City approved the Loretto redevelopment plan, declared the Property blighted, and granted the requested tax abatements on November, 14, 1996, with the adoption of Ordinance No. 961414. On the same date, by Ordinance No. 961358, the City rezoned the Property to URD. Shortly thereafter, the City and Loretto entered into a Chapter 353 redevelopment plan ("Contract"). The Contract, among other things, described the specific uses approved for the Property, and established a construction schedule for the four anticipated phases of the development.

In 1999, Loretto filed an application seeking an amendment to the Contract to modify some of the approved uses of the Property and to extend the construction schedule. Loretto's application was approved by the City on November 14, 1999 through the adoption of Ordinance No. 990655 (the "Committee Substitute for Ordinance No. 961414"). The City and Loretto then executed an amendment to the Contract ("the 1999 Amendment").

On March 16, 2007, Loretto filed an application seeking another amendment to the Contract to again modify some of the approved uses of the Property and to again extend the construction schedule.

The Riggins were afforded notice of public hearings conducted in connection with Loretto's application, and attended and participated in those hearings. Loretto's application was approved by the City on August 30, 2007 through the adoption of Ordinance No. 070790. Ordinance No. 070790 reaffirmed various findings and declarations made by the City in the Committee Substitute to Ordinance No. 961414. A corollary ordinance modifying the terms of the URD, Ordinance No. 070791, was adopted by the City on the same date, and imposed certain land use conditions on Loretto in connection with the City's adoption of Ordinance No. 070790. The City and Loretto then executed a second amendment to the Contract (the "2007 Amendment").

The Riggins own and/or reside at property located at 3936 and 3938 Mercier in Kansas City, Jackson County, Missouri, and thus adjacent to the Property. In October, 2007, the Riggins filed a lawsuit against the City and Loretto seeking a declaratory judgment that Ordinance No. 070790 authorizing the 2007 Amendment to the Contract was unreasonable and unlawful.[3] Specifically, the Riggins contended that Ordinance No 070790 was arbitrary, unreasonable, and unlawful because the City failed to afford due consideration to a long list of concerns, including inadequate parking, Loretto's failure to satisfy Minority Business Enterprise and Women Owned Business Enterprise requirements, Loretto's failure to timely provide required financial information as required by the

---

2. In accordance with section 353.110.1, general ad valorem taxes can be fully abated for up to 10 years. During the full abatement period, the redevelopment property's assessed value is effectively frozen at its pre-abatement value. During the next ensuing period not in excess of 15 years, general ad valorem taxes can be assessed at a rate not to exceed 50% of the "true value" of the property as determined by regular assessments. Section 353.110.2.

3. The Riggins' lawsuit also initially asserted that the 1999 Amendment was unlawful. The Riggins abandoned this claim prior to trial. Thus, the lawfulness of the 1999 Amendment is not contested.

Contract, Loretto's failure to submit a complete application in connection with its request for the 2007 Amendment, and Loretto's failure to meet the construction deadlines imposed by the Contract without good cause shown. The Riggins' lawsuit also suggested that the City did not have the lawful authority to extend Loretto's construction deadlines beyond those set forth by the Contract, and that the City was required before approving the 2007 Amendment to make new findings with respect to whether the Property was blighted.

Following a bench trial, the trial court entered its Findings of Fact, Conclusions of Law, and Judgment on June 15, 2010 ("Judgment")[4] in favor of the City and Loretto, and against the Riggins. Specifically, the trial court concluded that the Riggins failed to rebut the presumption that Ordinance No. 070790 is valid and thus did not meet their burden to prove that Ordinance No. 070790 was unreasonable. The trial court further concluded that the City acted within its lawful discretion to determine either that Loretto was in substantial compliance with the Contract as amended by the 1999 Amendment, or that for some other reason, taking action against Loretto for its alleged breaches of the Contract as amended was not the preferred course. Finally, the trial court found that Ordinance No. 070790 incorporated and reaffirmed the findings and declarations the City had previously made with respect to blight and the public convenience and necessity served by the Chapter 353 development.

The Riggins filed this timely appeal.

## Standard of Review

 On appeal from a trial court's judgment reviewing a legislative decision, we "examine[ ] the record to determine whether there is substantial evidence to support the legislative decision." *Centene Plaza Redevelopment Corp. v. Mint Props.*, 225 S.W.3d 431, 433 (Mo. banc 2007) (citing *Binger v. City of Independence*, 588 S.W.2d 481, 486 (Mo. banc 1979)).[5] If we conclude "from the record that there is substantial evidence that the [legislative decision] was reasonable and necessary, then the issue was at least debatable and the legislative decision must be permitted to stand." *Binger*, 588 S.W.2d at 486. Where a legislative decision is questioned as in excess of the legislative body's lawful authority, we will review that question *de novo*. *See, e.g., Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.*, 518 S.W.2d 11, 15 (Mo.1975) ("Judicial review is limited to whether the legislative determination was arbitrary ... or whether the City exceeded its powers.").

## Analysis

The Riggins raise two points on appeal. Point One asserts that the trial court erred in concluding that the City exercised its lawful discretion to waive Loretto's non-

---

4. In advance of trial, the Riggins requested the trial court to make findings of fact and conclusions of law as permitted by Rule 73.01.

5. The Riggins took the erroneous position in their Brief that *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) describes our standard of review. However, our Supreme Court has observed that *Murphy* applies "in court tried cases wherein the trial court has acted as the

trier of fact. It does not apply when the trial court has reviewed the propriety of a decision by an administrative or by a legislative body." *Binger v. City of Independence*, 588 S.W.2d 481, 486 (Mo. banc 1979). In their Reply Brief, the Riggins acknowledge that *Centene Plaza Redevelopment Corporation v. Mint Properties*, 225 S.W.3d 431, 433 (Mo. banc 2007) accurately describes our standard of review.

performance of the Contract by adopting Ordinance No. 070790 and entering into the 2007 Amendment. The Riggins contend that Loretto's breach of the Contract automatically terminated the Contract and that the City lacked the authority to further amend the Contract.

In Point Two, the Riggins contend that the City unreasonably adopted Ordinance No. 070790 authorizing the 2007 Amendment because the amount of parking required per the City's parking ordinances for the modified uses permitted by the amendment is not available on the Property.

We disagree and affirm.

### Point One

In their first point, the Riggins challenge the lawfulness of the City's adoption of Ordinance No. 070790. They claim that once Loretto breached the Contract, the Contract automatically terminated by its terms, and the City thereafter had no authority to disregard or waive Loretto's breach by adopting Ordinance No. 070790 authorizing the 2007 Amendment. Though the Riggins discuss several claimed breaches of the Contract by Loretto,[6] the only breach which is tied by Contract language to the prospect of automatic termination of the Contract is Loretto's failure to commence or complete construction in accordance with the schedule set forth in the 1999 Amendment.

The Contract provides in Section 3 that:

*Development Improvements.* In accordance with the terms and conditions of the Development Plan and this Contract, [Loretto] shall construct or cause to be constructed the improvements set forth in Exhibit B.

Exhibit B to the Contract described the phases of the development planned for the Property.

Section 5 of the Contract provides that: *Time Schedule. Subject to the provisions of Section 23 of this Contract,* excusable delays, acquisition, demolition and construction of each phase of the Development Plan shall be commenced and completed no later than the dates set forth in Exhibit C attached hereto and incorporated herein by reference. If acquisition or construction of a phase is not commenced at the time provided for in Exhibit C then [Loretto] shall forego all rights under the Development Plan with respect to such phase. Failure of [Loretto] to complete construction of any phase within the time limits prescribed by this Contract, if such failure shall continue for a period of three (3) years, shall terminate [Loretto's] rights hereunder without further action by the City.

(Emphasis added.) Exhibit C described the acquisition start and end dates, the blight removal start and end dates and the construction start and end dates for each of the phases described in Exhibit B.

Section 23 of the Contract provides that: *Excusable Delays.* Notwithstanding any provision of this Contract or the Development Plan to the contrary, performance by [Loretto] shall not be deemed to be in default where delays or defaults are due to war, insurrection, strikes, lock-outs, riots, floods, earthquakes, fires, casualties, acts of God, labor disputes, governmental re-

---

**6.** For example, the Riggins complain that various financial reports, certifications, and disclosures required by the Contract were never filed, or were not timely filed, by Loretto.

The Riggins also complain that Loretto failed to comply with the Missouri Prevailing Wage Act.

strictions or priorities, embargoes, litigation, tornadoes, unusually severe weather, inability to obtain or secure necessary labor, materials, or tools, delays of any Contractor, subcontractor, or supplier, acts or failure to act of the City or of any other governmental agency or entity, *or any other causes beyond the control or without the fault of [Loretto].* With the approval of the City, the time of performance hereunder shall be extended for the period of any delay or delays caused or resulting from any of the foregoing causes. All extensions hereunder shall be effective only if approved by the City Council by ordinance, which approval shall not be arbitrarily or unreasonably withheld, it being understood that [Loretto] is entitled to such extensions upon presentation of documentation of the periods of such delays.

(Emphasis added.)

The 1999 Amendment acknowledged the continued force and effect of the Contract "except as in conflict" with the 1999 Amendment. The 1999 Amendment substituted a new Exhibit B and a new Exhibit C. The 1999 Amendment thus modified the uses permitted in each of the planned phases of construction (Exhibit B) and extended the acquisition, blight removal, and construction start and end dates for each phase (Exhibit C). Exhibit B directed that development of all phases other than

Phase I could not commence until the completion of Phase I, and that Loretto was afforded the express "right to alter the sequence of [the remaining phases] as market conditions dictate." In all other respects, Sections 3, 5, and 23 of the Contract remained unchanged by the 1999 Amendment.

Loretto failed to meet the construction deadlines described in Exhibit C to the 1999 Amendment. In fact, one of the reasons Loretto filed an application seeking the 2007 Amendment was to secure an extension of the construction deadlines described in Exhibit C. When the application for the 2007 Amendment was filed by Loretto on March 16, 2007, Phase I was under construction but was not complete. Because development of all other phases was prohibited until the completion of Phase I, no construction had commenced in any other phase.[7] Loretto's failure to either commence or complete construction in each phase had continued for at least three years beyond the applicable deadline either by the time the application for the 2007 amendment was filed or by the time Ordinance No. 070790 was adopted.[8]

The 2007 Amendment authorized by Ordinance No. 070790 deleted Exhibit C and replaced it with language describing new construction start and end dates for each of the phases of construction.[9] The Riggins argue that in accordance with Section 5 of the Contract, Loretto's rights as to

---

7. These are the Riggins' factual assertions, and they are not seriously challenged by the City or by Loretto. However, the accuracy of the Riggins' factual assertions is immaterial, given our determination, discussed *infra*, that the City was authorized to extend the construction schedule notwithstanding Loretto's failure to satisfy the deadlines.

8. Exhibit B to the 1999 Amendment required construction to commence and to be completed as follows: Phase I was to commence in July 1996 and be completed by December

2000; Phase IA was to commence in July 1997 and be completed by July 2002; Phase II was to commence in July 1998 and be completed by July 2004; Phases III and IV were to commence in July 2002 and be completed by July 2007.

9. Acquisition and blight removal start and end dates were removed, explained by the fact that Section 5 of the 2007 Amendment noted that Loretto had, by that time, acquired all of the Property within the redevelopment area.

each phase of the redevelopment plan had automatically terminated at least by the time Ordinance No. 070790 was adopted, and in some of the phases, long before. The Riggins claim the City did not have the authority to disregard the automatic termination of the Contract by extending Loretto's construction deadlines, and that Ordinance No. 070790 is unlawful as a result. We disagree.

■ The Riggins' argument focuses on the final passage of Section 5, but ignores that Section 5 of the Contract begins by noting that its provisions are "[s]ubject to the provisions of Section 23 of the Contract." Section 23 of the Contract expressly anticipates that Loretto may be delayed in its performance of the Contract, and authorizes the City to extend Loretto's performance deadlines should the delay be the result of one of several enumerated reasons, including "any other causes beyond the control or without the fault of [Loretto]." In fact, Section 23 provides that requests for extension due to excusable delays "shall not be arbitrarily or unreasonably withheld."

The City found in Ordinance No. 070790 that "good cause had been shown for the approval" of Loretto's application seeking the 2007 Amendment. The Riggins' Point One does not contend that Ordinance No. 070790 was arbitrary and unreasonable because there was not substantial evidence to support this legislative decision.[10] *Centene Plaza Redevelopment Corp.*, 225 S.W.3d at 433.

Instead, the Riggins' Point One seems to be arguing that even had there been evidence suggesting a basis to find excusable delay under Section 23, the language in

Section 5 automatically terminating Loretto's rights under the Contract without further action of the City controls. In other words, the Riggins would have us read Section 23 to permit Loretto to request, and the City to afford, extensions to the construction schedule for excusable delays, but only if those delays occur within the three year window of the construction deadlines set forth in Exhibit C to the 1999 Amendment.

The Riggins' construction of Section 5 is strained and untenable, as it would require us to read into Section 23 a non-existent limitation on the City's authority to extend construction deadlines to address excusable delay. "We must give contract language its plain and ordinary meaning and we will not create a contractual right or limitation for the parties." *Hughes v. Davidson–Hues*, 330 S.W.3d 114, 120 (Mo. App. W.D.2010) (citations omitted). Section 23 does not limit Loretto's right to seek extensions of time to perform the Contract in the event of excusable delays to a period that is coextensive with the three year time frame to avoid automatic termination described in Section 5. In fact, and to the contrary, Section 23 notes that the right to seek and/or grant extensions of time to perform in the event of excusable delays exists "[n]otwithstanding any provisions of this Contract . . . to the contrary." We thus conclude that because the City found "good cause" for granting Loretto extended deadlines to complete construction, a factual finding that has not been preserved for appellate review by the Riggins in Point One, the City was authorized by Section 23 of the Contract to adopt Ordinance No. 070790 notwithstanding

---

10. The Riggins do generally assert in the argument portion of their Brief that Loretto's application seeking the 2007 Amendment did not establish "good cause" as described in Section 23 of the Contract for its delays in construction. However, this "argument" is not described as a point of error in Point One, and is thus not preserved for appellate review. Rule 84.04(e).

Section 5's "automatic termination" provision.

■ Even if the Riggins had preserved the argument in Point One (and could demonstrate) that Loretto failed to establish excusable delays permitting an extension of the construction deadlines pursuant to Section 23 of the Contract, the Riggins have not demonstrated that the City was without authority to waive the operation of the automatic termination provision in Section 5. The automatic termination provision operates to benefit the City, as it permits the City, without further action, to immediately divest Loretto of its rights under the Contract—including tax abatement rights. Thus, the City *could* have taken the position, once three years had passed as to each unsatisfied construction deadline, and in the absence of evidence of excusable delay, that Loretto's rights were automatically extinguished under the Contract. However, the City was neither obligated to take this position, nor foreclosed from waiving the benefit it was afforded by the automatic termination provision. "In Missouri, a party may waive any condition of a contract in the party's favor." *Bellos v. Winkles,* 14 S.W.3d 653, 655 (Mo.App. E.D.2000) (citing *Campbell v. Richards,* 352 Mo. 272, 176 S.W.2d 504, 505 (1944)).

■ The right to waive a condition operating in a party's favor extends to a provision which purports to effect an automatic termination of a contract. In *Crabby's v. Hamilton,* 244 S.W.3d 209 (Mo.App. S.D. 2008), our Southern District construed a real estate contract which included a provision stating that "if Buyer does not furnish seller with a copy of an effective written loan commitment within 30 days from the Effective Date, then this Contract shall automatically terminate." *Id.* at 212. An effective written loan commitment was not furnished to the seller within 30 days of the effective date of the contract. *Id.*

However, the parties proceeded toward closing, and thereafter entered into two amendments extending the closing date. *Id.* Neither amendment altered the provision of the original contract addressing the financing contingency. *Id.* at 213. Ultimately, the buyer refused to close. *Id.* The buyer then defended seller's suit for breach of contract claiming "the contract terminated pursuant to its own financing contingency provision when [Buyers] could not obtain financing." *Id.* The Southern District observed that financing contingencies to a contract create a condition to the obligation to close operating in favor of a buyer. *Id.* at 214. The court noted that "'the buyer can elect to waive the contingency and proceed with the contract under the rule that a party may waive any condition of a contract in that party's favor.'" *Id.* (quoting *Howard v. Youngman,* 81 S.W.3d 101, 110 (Mo.App. E.D.2002)). The court observed that such a waiver requires:

"[A]n intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of [sic] party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible."

*Id.* (quoting *Keltner v. Sowell,* 926 S.W.2d 528, 531 (Mo.App. S.D.1996) (citations omitted)). The Southern District concluded that because the buyer executed amendments to the contract extending the closing date at a point in time when the financing contingency had expired and the contract was subject to automatic termination, the "only reasonable explanation possible for and consistent with Buyers' signature on these documents is *their waiver of this contract requirement and*

*the resulting automatic termination of the contract."* *Id.* at 215 (emphasis added).

■ The factual scenario in *Crabby's* is identical to this case. The City did not *expressly* waive its right to take advantage of the provision of Section 5 permitting it, with no further action, to treat the Contract as automatically terminated. However, the only reasonable explanation possible for and consistent with the City's adoption of Ordinance No. 070790 (and consequent execution of the 2007 Amendment) is its waiver of this Contract right and the resulting automatic termination of the Contract.

In their Reply Brief, the Riggins attempt to distinguish *Crabby's.* The Riggins argue that *Crabby's* does not apply to permit the waiver of performance constraints included in a contract entered into by a municipality pursuant to an authorizing ordinance. They rely on the authority of *Barber Asphalt Paving Co. v. Ridge,* 169 Mo. 376, 68 S.W. 1043 (1902) and *Smith v. City of Westport,* 105 Mo.App. 221, 79 S.W. 725 (1904).[11] Their reliance is misplaced.

Both *Barber* and *Smith* involve public works contracts between a municipality and a private contractor where the work was to be paid for by the issuance of tax bills to private landowners. *Barber,* 68 S.W. at 1043–44; *Smith,* 79 S.W. at 726–27. In both cases, the work was not completed by the time originally required by the authorizing ordinance. *Barber,* 68 S.W. at 1044; *Smith,* 79 S.W. at 726. In both cases, the private landowner defended the municipality's efforts to enforce tax

bills issued to pay for the work on the basis that the municipality had illegally extended the contractor's time for performance after the original time for performance had expired. *Barber,* 68 S.W. at 1043–44; *Smith,* 79 S.W. at 726. On appeal in both cases, the court declared it unlawful for a municipality to extend the time to perform a public works contracts beyond the original completion date set forth in the enabling ordinance, particularly where time had been declared of the essence. *Barber,* 68 S.W. at 1043–44; *Smith,* 79 S.W. at 726–27.

The only other cases we have located besides *Barber* or *Smith* which similarly hold that a municipality has no lawful authority to extend a performance deadline in a contract are also cases involving public works projects where the work was to be paid for via the issuance of tax bills. *See, e.g., Casteel v. Dearmont,* 221 Mo.App. 1217, 299 S.W. 816 (1927); *Paul v. Burress,* 152 Mo.App. 39, 132 S.W. 330 (1910); *Hund v. Rackliffe,* 192 Mo. 312, 91 S.W. 500 (1905); *Spalding v. Forsee,* 109 Mo. App. 675, 83 S.W. 540 (1904); *Sparks v. Villa Rosa Land Co.,* 99 Mo.App. 489, 74 S.W. 120 (1903); *Neill v. Gates,* 152 Mo. 585, 54 S.W. 460, 463 (1899). All of these cases generally hold that if an ordinance authorizes a *public works* contract, and specifies a date for completion, then a municipality cannot legally extend that date, thus extending a private landowner's liability on tax bills issued to pay for the work. In contrast, the Contract is not a public works contract. Neither Ordinance No. 961414 nor Ordinance No. 990655 specified

---

11. We observe that the Riggins cited no authority in their initial Brief supporting their claim that the automatic termination provision in Section 5 of the Contract operated to permanently divest the City of the authority to amend the Contract by extending the construction deadlines. Their failure to cite any supporting authority until the filing of their Reply Brief defeats the purpose of Rule 84.04(d)(5) which requires an appellant to list cases following their Point Relied On on which the party principally relies to support a claim of error. By citing to primary supporting authority for the first time in their Reply Brief, the Riggins have deprived the Respondents of an opportunity to respond.

precise dates for completion of the construction authorized on the Property. Neither ordinance envisioned any development costs being paid for by the issuance of tax bills to private landowners.

More to the point, the origin of the principle described in the aforesaid cases, all of which are around 100 years old, is apparently constitutional. *See Neill*, 54 S.W. at 463 ("We think it clear that it was beyond the power of Kansas City, by Ordinance No. 5453, ... to impair the rights of [private landowner] which existed under the contract at the time of the passage of such ordinance, as such legislation with respect to such a contract *was unconstitutional and void.*" (Emphasis added)). The 1875 Missouri Constitution in effect at the time each of the aforesaid cases was decided provided at Article II, Section 15 that "[t]hat no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly." In addition, Article XII, Section 19 of the 1875 Missouri Constitution provided that "[t]he General Assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, *or which imposes on the people of any county or municipal subdivision of the State a new liability in respect to transactions or considerations already past.*" (Emphasis added.) When the people of Missouri repealed the 1875 Missouri Constitution by adoption of the 1945 Missouri Constitution, former Article II, Section 15 was substantially readopted as Article I, Section 13. However, former Article XII, Section 19 *was not readopted.*[12] Thus, because the outcome in the

above referenced cases was likely influenced by a constitutional provision that is no longer in effect, these century old cases are of no relevance to us, even assuming they could be read to apply generally to *all* municipal contracts, and not just to *public works* contracts paid for by tax bills issued to private landowners.

In contrast, it is widely recognized that "[m]unicipalities are corporate entities granted the power to ... enter into contracts for the performance of anything which is within their corporate power. *Such contracts are subject to the general substantive law relating to contracts.*" Matthews, MUNICIPAL ORDINANCES, Revised Vol. 1, section 11.01 (emphasis added). The general substantive law relating to contracts recognizes that "[t]he parties to a contract ordinarily are as free to change it after making it as they were to make it in the first instance, *notwithstanding provisions in it designed to hamper such freedom.* For instance, the time fixed for performance or payment may be enlarged by subsequent agreement." 12 Am.Jur. p. 1004–05 section 427 (emphasis added). "A municipal corporation has the same authority to amend or change its contracts within the proper scope of its powers as an individual." McQuillan, THE LAW OF MUNICIPAL CORPORATIONS, section 37:125 (3d ed.). The Riggins have not directed us to any applicable authority suggesting that the City has exceeded the proper scope of its powers by agreeing to extend Loretto's construction deadlines via adoption of Ordinance No. 070790. Nor have the Riggins directed us to any provision in Chapter 353 which prohibited the City from doing so.

The Riggins do argue that Loretto's construction delays have harmed the City

---

**12.** This likely explains why there have been no cases since the early 1900's which hold similarly to either *Barber* or *Smith.*

and its taxpayers by perpetuating the continuation of damages resulting from unrealized ad valorem tax revenues. This complaint has no relevance except if made in connection with an argument that adoption of Ordinance No. 070790 was arbitrary, capricious, and unreasonable (as opposed to unlawful)—a claim not preserved by the Riggins in Point One. In any event, the Riggins' complaint reflects a misapprehension of the affect of tax abatements under Chapter 353.

In accordance with section 353.110.1, general ad valorem taxes can be fully abated for up to 10 years. During the full abatement period, the redevelopment property's assessed value is effectively frozen at its pre-abatement value, and the city is entitled to no tax revenue from the property—a direct result of the Chapter 353 designation, and not a result that is in any way influenced by the progress of construction. The initial full abatement period is prescribed by statute, and thus cannot be extended by a developer's delays in the completion of improvements anticipated by a Chapter 353 plan.

During the next ensuing partial abatement period of up to 15 years, general ad valorem taxes can be assessed at a rate not to exceed 50% of the "true value" of the property as determined by regular assessments. Section 353.110.2. During this time, the developer is paying ad valorem taxes at a rate that is tied to the property's actual assessed value. The "partial abatement" period is also statutorily prescribed and cannot be extended due to delays in the developer's ability to complete construction. However, delays in construction do prejudice the developer, as they prevent the developer from maximizing its tax savings by affording partial tax abatement against the property at a "true value" that is less than it would be if the property was fully developed. Stated

differently, when a developer finally completes delayed construction on a Chapter 353 project, the developer will have fewer years of partially abated tax relief for the property at its highest "true value." Conversely, though a city will collect less tax during the fifteen year partial abatement period, that is a consequence of the Chapter 353 plan itself, and not of construction delays. In fact, delays in construction will afford a city the benefit of full taxes on the "true value" of a completed development for a longer period than originally anticipated.

We conclude, therefore, that the City was authorized, either by Section 23 of the Contract or by the general principle of contract law permitting a party to waive a beneficial contract provision, to exercise its discretion to extend Loretto's construction deadlines.

This conclusion is consistent with general ordinances describing the City's authority, and with other provisions in the Contract beyond those already discussed. Section 74–31 of the City's Code states, in pertinent part, that:

> Whenever any person or corporation under an approved development plan does not substantially comply with the development plan for the completion of each stage thereof as therein stated ... unforeseen circumstances beyond their control, alone excepted ... the City has the authority and the discretion to bring an action for damages against the redevelopment corporation for breach of any of the provisions of the redevelopment plan.

The unstated but obvious corollary to the City's right to exercise its discretion to sue a development corporation for its failure to achieve construction deadlines is the right to ignore, even waive, such a default. Significantly, Chapter 74 of the City's Code is incorporated by reference into the Con-

tract, and Section 74–31 of the City's Code is essentially replicated as Section 21 of the Contract.

In addition, Section 31 of the Contract affords the City and Loretto the express authority to modify the Contract by mutual agreement "approved by an ordinance or ordinances duly adopted by the City Council." The only limitation imposed on this authority is the prohibition against construing the Contract as "an enlargement of the authority conferred upon the City by the Urban Redevelopment Corporations Law [Chapter 353]." The authority to amend the Contract is not otherwise limited, and certainly does not exclude the right to amend the Contract to extend the time frames for Loretto's performance described in Exhibit C.

In the argument portion of their Brief, the Riggins suggest that as taxpayers impacted by the time extensions afforded Loretto, they have the right to insist on the City's enforcement of the automatic termination provision in Section 5 of the Contract—in other words, the right to prohibit the City from waiving enforcement of the provision. The Riggins do not clearly explain, however, the genesis of this right, though their arguments come perilously close to asserting a claim of third party beneficiary status not raised with the trial court or in Point One. Sensitive to the same innuendo, the City and Loretto point

out in their Briefs that the Riggins are not third party beneficiaries of the Contract under any recognized theory. In their Reply Brief, the Riggins agree, and note they are not seeking to enforce the Contract or the 1999 Amendment. This argument is confusing, however, given the Riggins' position on appeal seeking to do just that by claiming that the City had no discretion but to enforce the automatic termination provision in Section 5 of the Contract.

We think the confusion with the Riggins' argument can be simply explained. The Riggins are entitled to contest the validity of Ordinance No. 070790 as they are nearby (if not adjacent) property owners arguably affected by the redevelopment plan for the Property. *See Schweig v. City of St. Louis*, 569 S.W.2d 215, 221 (Mo.App. 1978). The Riggins' reliance on Section 5's automatic termination provision is relevant only to the extent the Riggins can argue either: (a) that the automatic termination provision operated to divest the City of the lawful authority to amend the Contract to extend the construction schedule (the argument they raise in Point One), or (b) that the City's failure to enforce the automatic termination provision was arbitrary, capricious, and unreasonable (an argument the Riggins have not raised in Point One, and have not preserved for appellate review).[13] We have already addressed why

13. The Riggins would have a difficult time prevailing on a theory that Ordinance No. 070790 was "unreasonable." Ordinances are presumed valid. *Flora Realty & Inv. Co. v. City of Ladue*, 362 Mo. 1025, 246 S.W.2d 771, 778 (Mo. banc 1952). If a review of the record reflects substantial evidence that the City's exercise of discretion to amend the Contract by adoption of Ordinance No. 070790 was reasonable and necessary, then the issue was at least debatable and the City's decision must be permitted to stand. *Binger*, 588 S.W.2d at 486. The trial court found that the City, "in its 'authority' and 'discretion,' "

determined either that Loretto was in substantial compliance with the Contract or that for some other reason taking action to terminate or seek damages for breach of the Contract was not the preferred course. The trial court found that the Riggins and other interested parties had every opportunity to express their concerns to the City during public hearings preceding adoption of Ordinance No. 070790. The trial court concluded that "[b]ased on the information before the Council when it considered the ordinance, these issues were, at best, 'fairly debatable.' "

the Riggins' assertion that the City lacked the authority to waive the automatic termination of the Contract by the adoption of Ordinance No. 070790 is without merit.

■ Finally, the Riggins sprinkled into the argument portion of their Brief one additional issue. The Riggins suggest that Ordinance No. 070790 is an unlawful "special" ordinance that violated rules or standards laid down by earlier ordinances (referring to general provisions in Chapter 74 of the City's Code) that were not repealed by Ordinance No. 070790. Because this claim was not asserted as a claim of trial court error in Point One, the Riggins have preserved nothing for appellate review. Rule 84.04(e). This argument was also not raised at trial—an additional reason to conclude that the argument preserves nothing for appellate review. *See State ex rel. Houska v. Dickhaner,* 323 S.W.3d 29, 33–34 (Mo. banc 2010).

■ Even were we to afford this claim appellate review, it would be unpersuasive. In *Annbar Associates v. West Side Redevelopment Corporation,* our Supreme Court explained the difference between ordinances of a general nature (like Chapter 74) and ordinances of a specific nature adopted in connection with a particular Chapter 353 project (like Ordinance No. 070790). 397 S.W.2d 635, 650 (Mo. banc 1965). The Supreme Court concluded that it is an acceptable practice to adopt general ordinances setting forth policies and general standards, while also adopting specific ordinances outlining the precise condi-

tions and restrictions applicable to a Chapter 353 redevelopment project. *Id.* Thus, the Riggins' suggestion that Ordinance No. 070790 is an invalid "special" ordinance is without merit.

We conclude for the reasons herein discussed that the City did not exceed its authority when it adopted Ordinance No. 070790. The City had the authority to exercise its discretion to waive Loretto's failure to achieve the construction schedule deadlines set forth in Exhibit C to the 1999 Amendment, and to adopt Ordinance No. 070790 authorizing the 2007 Amendment extending those deadlines. Ordinance No. 070790 is not unlawful.[14]

Point One is denied.

## Point Two

In their second point, the Riggins claim that the City's adoption of Ordinance No. 070790 was arbitrary, capricious, and unreasonable because the available parking on the Property is not sufficient to satisfy the parking requirements set forth in the City's parking ordinances for the collective uses authorized by the 2007 Amendment.

■ As we have observed, ordinances are presumed valid. *Flora Realty & Inv. Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W.2d 771, 778 (Mo. banc 1952). If a review of the record reflects substantial evidence that the City's adoption of Ordinance No. 070790, notwithstanding complaints about the amount of available parking, was at least debatably reasonable, then the City's decision to adopt Ordinance

---

Based on our review of the record, we would reach the same conclusion.

14. We express no opinion as to whether an automatic termination provision in a Chapter 353 contract, though waivable by a city, nonetheless requires the city to establish at the time construction deadlines are extended, that the precursors to Chapter 353 treatment—including a finding of blight—still exist.

Though the Riggins did argue at trial that the City was required to determine blight anew at the time it adopted Ordinance No. 070790, the trial court disagreed and found it was sufficient for the City to incorporate its earlier findings on such matters into Ordinance No. 070790 by reference. The Riggins did not challenge this conclusion on appeal.

No. 070790 must be permitted to stand. *Binger*, 588 S.W.2d at 486.

The trial court concluded that "[b]ased on the information before the Council when it considered the ordinance, these issues were, at best, 'fairly debatable,'" and that as a result, the Riggins "failed to rebut the presumption that Ordinance No. 070790 is valid." The "issues" the trial court was referring to included parking. As the trial court noted in its judgment, and as our review of the record confirms:

> [T]he [Riggins] and a few other neighbors of the Loretto opposed many aspects of the Redevelopment Plan, as well as amendments to the Plan. This fact is most pointedly illustrated by [the Riggins'] proposed findings of fact and conclusions of law, in which they submitted ... facts regarding the number of parking spaces that should be allowed for given the Plan.

The trial court also found, and our review of the record confirms, that:

> [The Riggins] and other concerned neighbors did not hesitate to make the City and [Loretto] aware of all of these concerns. Further, there is no evidence from which the Court can conclude that the City failed to evaluate these issues. The record before the Court shows that the City staff and the City Council considered these concerns and, ultimately, determined that the proper course was to approve the 2007 Amendment through Ordinance No. 070790.

In fact, the City Staff Report prepared in connection with Loretto's application seeking the 2007 Amendment noted the following with respect to parking:

> During the recent rehabilitation of the Loretto, the site was improved with approximately 230 parking spaces—well more than currently needed for Phase I. The change in land use to add the hotel, office, restaurant and apartments increases the total required parking to 272 spaces. The ultimate build-out supply will be 254 parking spaces, a shortage of 16 spaces. The plan states that this slight deficiency is justified because this is a mixed use development, the actual demand is lessened because of uses during off-peak times (weddings on the weekend) and the location of the site on an ATA corridor.

The City's approval of Ordinance No. 070790 and related Ordinance No. 070791 (modifying the URD) incorporated a Staff recommendation that Loretto be required to prepare cross access/cross parking easements between all portions of the development on the Property.

■■■ The Riggins complain that the City's approval of Ordinance No. 070790 was unreasonable because, according to the Riggins' calculations, as few as 369 or as many as 421 parking spaces are actually required for the uses of the Property authorized by the 2007 Amendment. The Riggins reach this conclusion by adding up the number of parking spaces required for each type of authorized use based on other City ordinances, primarily Sections 80–444 and 80–445. However, the Riggins have ignored Section 80–173 of the City's Code. That section addresses URD plans and provides that:

> Parking ... must be provided at a ratio in accordance with sections 80–444 and 80–445 unless, in the opinion of the city council, after recommendation by the city plan commission, it is determined: (a) *That a mixed use as proposed would demand less than the required parking as otherwise provided* ....

(Emphasis added.) The italicized language reflects precisely the discussion noted in the Staff Report. John Eckhardt, the City planner for development, testified at trial that the City heard evi-

dence regarding parking and determined that fewer parking spaces were needed than required by parking ordinance. Mr. Eckhardt testified that City Staff encourages less parking in mixed-use projects so that unneeded parking is not constructed.

It is obvious that the Riggins disagree with the City's conclusion that there will be sufficient parking for the Property given its authorized uses. That disagreement, however, is not sufficient to meet the Riggins' burden to overcome the presumed validity of Ordinance No. 070790. The Riggins' disagreement with the City is not self-proving of the assertion that the City's adoption of Ordinance No. 070790 is arbitrary, capricious, or unreasonable. "Unless it should appear that the conclusion of the City's legislative body in the respect in issue ... is clearly arbitrary and unreasonable, we cannot substitute our opinion for that of the City's. . . . If the City's action ... is ... fairly debatable" the City's action must be permitted to stand. *Landau v. Levin*, 358 Mo. 77, 213 S.W.2d 483, 485 (Mo. banc 1948).

Point Two is denied.

## Conclusion

The trial court's Judgment concluding that the City's adoption of Ordinance No. 070790 was not arbitrary, capricious, unreasonable, or unlawful is affirmed.

All concur.