JOHN STROHMAIER, Respondent, v. WILLIAM ZEPPENFELD, Appellant.

March 5, 1877.

In an action to compel specific performance of a lease-covenant to renew, where the renewal clause stipulates that the rent for the new term shall be a per cent. of the value of the leased premises, such value to be determined by arbitration, and the lessor refuses to arbitrate, a court of equity will not compel him to do so; but will hear evidence, and, upon the case made, decree specific performance of the contract in its essential particulars.

3    429|
120m 453|

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*T. Z. Blakeman*, for appellant, cited: 4 Kent's Com., sec. 109 ; Underwood *v.* Underwood, 48 Mo. 527 ; Hug *v.* Van Burkleo, 58 Mo. 202 ; Biddle *v.* Ramsey, 52 Mo. ; Story's Eq. Jur., sec. 1457.

*Jecko & Hospes,* for respondent, cited : Arnot *v.* Alexander, 44 Mo. 25 ; Hall *v.* Warren, 9 Ves. 605 ; Finney *v.* Cist, 34 Mo. 303.

HAYDEN, J., delivered the opinion of the court.

This is a bill in the nature of a bill in equity, asking that the defendant may be compelled to execute a renewal of a lease.   A former owner of the leased lot had leased it to the respondent for a term of ten years, and in the lease was the following covenant: " And it is covenanted and agreed by and between the said parties that, at the end of the term hereby demised, this lease shall be renewable for the further

term of ten years, provided that the party of the second part giving [give] to the party of the first part notice in writing of his or their wish to renew the same, three months at least before the end of the term. And the lease so renewed shall contain all the covenants, agreements, clauses, and stipulations herein contained, with this exception only : the annual rents to be reserved on the renewal shall be six *per centum* upon the value of the demised premises, exclusive only of the improvements thereon placed by said lessee, or his legal representatives, if any, which value shall be estimated by two disinterested freeholders of the city of St. Louis, one of whom shall be selected by the party of the first part and the other by the party of the second part,'' etc. Another clause in the lease provided that the lessee might, at the termination of the lease, '' remove, at his or their own option, the improvements, buildings, fences, etc., which he or they may have erected or caused to be put on said premises, at his or their own expense,'' etc. The first term expired in July, 1875, and the appellant, who was then the owner, having bought the land subject to the lease, claimed that the lessee was not entitled to a renewal, and brought an action of unlawful detainer before a justice of the peace for possession of the lot. Upon this the respondent filed the bill in equity for specific enforcement of the covenant, and to enjoin the appellant from further prose cuting the suit for unlawful detainer. The bill, among other things, alleged that the property when leased was unimproved, and that the respondent had improved it at an outlay of $2,000, the improvements, at the end of the first term, being worth $1,600 ; that the rental value of the lot, without the improvements, was, if estimated by the terms of the lease, not over $80, while the rental value of the improvements was $300 over the rental value of the lot ; that, if removed, the improvements would be worthless ; that the appellant was insolvent, and unable to answer in damages to any judgment the respondent might get against him. The

bill further alleged compliance with the terms of the lease on the part of the respondent, and that, while the respondent had appointed one disinterested freeholder to appraise the lot, under the lease, the appellant had refused to do anything on his part toward fixing the rent for a renewal term. A temporary injunction was granted. The appellant demurred to the bill, and the demurrer was overruled, as was also a motion to dissolve. The respondent refusing to plead, the court below entered a final decree that the covenant for renewal " cannot be specifically enforced, and the prayer of the plaintiff therefor be, and the same is hereby, denied." The decree then found that the plaintiff was entitled to the improvements, and to retain possession of the lot till he received full compensation for the improvements, and the final order was that the appellant be enjoined from prosecuting the suit for unlawful detainer till the appellant should pay to the respondent $1,600, the full value of the improvements placed on the lot by the respondent. From this decree the appellant appeals to this court.

The decree in this case does not follow the bill, nor is it warranted by the facts before the court. The allegations of the bill are directed to a specific performance of the covenant to renew, and, as subsidiary to this, to enjoining the proceedings before the justice. The court below was no doubt moved by the exceeding hardship of the case. Here is a lessee who, it would appear, relying on the covenant to renew, has gone on and put upon the ground valuable improvements, of a kind which he cannot remove, and who now finds himself upon the point of being deprived of his property by the refusal of the owner of the land to perform an agreement which he was bound in equity to perform. It is no more than reasonable to suppose that it was because he relied on the covenant to renew that the lessee did not have inserted in the lease a provision to the effect that the improvements should be valued, and paid for by the landlord, at the end of the term. But however hard the case may be, we cannot insert in the lease a covenant which the

parties have not inserted. It is for us to apply to the facts of this case, as they are, those remedies which courts of equity, at the present day, seem to be unanimous in applying to a case of this kind.

It is well settled that a court of equity will not specifically enforce a contract for arbitration. Where arbitrators are to act, the court will neither compel their appointment, nor, when they are appointed, will the court compel them to act. *Agar* v. *Macklew*, 2 Sim. & St. 418; *Milnes* v. *Gery*, 14 Ves. jr. 400; Story's Eq. Jur., sec. 1457. But where, as in the present case, the parties have by a written contract definitely agreed upon all the substantial terms, equity will not permit one of them to set up his own wrong as a defense to the non-performance of the contract, and thereby to keep possession of property which the first party has laid out in the expectation that the contract would be performed. In such a case, when the defendant refuses to comply with his contract, he subjects himself to the operation of those remedies which courts of equity afford. Having broken the contract himself, it does not lie in his mouth to say the contract cannot be performed because it provides that one element in ascertaining the rent is a valuation by persons to be selected by the parties. The answer to this is that, as the owner of the ground refuses to perform the contract precisely as made, and thereby works a wrong to the lessee, for which the latter has no adequate legal remedy, a court of equity, to prevent a failure of justice, applies its own remedy to the breach of contract. In such cases a court of equity does not proceed upon the basis of enforcing the contract exactly as made by the parties, but upon the theory that, while in all important respects the contract can be specifically performed as the parties made it, in some minor matter where, through the wrong of the party resisting, it cannot be exactly enforced, equity, in pursuance of its principle of substituting compensation for performance, where it is necessary in order to attain the ends of substantial justice, will apply its own remedies to

the wrong, and thus secure that which, in essentials, is a performance. The real difficulty lies in deciding what contracts are so uncertain that equity will not apply this rule of compensation to them. On the one hand, equity cannot make contracts for the parties ; on the other, it will not let the defendant escape the consequences of his obligation where only some insignificant detail is in doubt. While the rule itself is admitted, there is a conflict, in the older authorities, as to what terms are of the essence of a contract. Jeremy's Eq. Jur. 443 ; *Gourlay* v. *Duke of Somerset*, 19 Ves. jr. 429, and cc. in Mr. Sumner's notes ; Lord Eldon in *Wilkes* v. *Davis*, 3 Meriv. 508. In *Gregory* v. *Mighell*, 18 Ves. jr. 328, where the agreement was performed in part, a specific execution was decreed, though the rent was to be fixed by indifferent persons to be appointed by the parties. In *Hall* v. *Warren*, 9 Ves. jr. 605, where the valuation was to be by appraisers appointed by the parties, the master of the rolls, Sir William Grant, said : " Nothing appears in the acts to be done so purely personal that they cannot be supplied without the intervention of the mind and the act of the party ; for they are to be done with reference to a given mode ; and, with regard to ascertaining the value, a mode equivalent and as effectual and fair may be found." Whatever may be said as to the older cases, this appears to be an accurate expression of the principle upon which the more recent cases have proceeded. In *Judson* v. *Judson*, 19 Eng. Law & Eq. 547, where the contract provided that each party should appoint a valuer, and the valuers appointed could not agree, and the vendor then refused to join in any scheme for a valuation, the court decreed specific performance. The vice-chancellor said : " The sixth condition stated that the purchaser should take the property at a valuation, the essence of the stipulation not appearing to be the mode in which the valuation was to be made." *Dunnell* v. *Keteltas*, 16 Abb. Pr. 205 ; *Kelso* v. *Kelly*, 1 Daly, 419, where the authorities are reviewed with much care. It

, seems clearly the doctrine of the later cases that equity will, to prevent a failure of justice, apply its own remedies, and thus, where the substantial terms of a contract are agreed upon, arrive approximately at the minor details and then specifically enforce the contract. *Parker* v. *Taswell*, 2 De G. & J. 559 ; *Norris* v. *Jackson*, 3 Gif. 396 ; *Backus' Appeal*, 58 Pa. St. 186, 193. This rule has an *a-fortiori* application where there is a part performance, or where the party seeking to enforce the contract has laid out money or property in the faith that the other party will keep his covenants.

It would be peculiarly hard if relief should be denied to the plaintiff in the present case. Since the decision of the Supreme Court of this State in the case of *Arnot* v. *Alexander*, 44 Mo. 25, persons taking leases with covenants similar to that in the present lease have had, in some sort, a right to expect that courts of equity in this State will enforce them. The clause drawn in question in that case is not, indeed, precisely similar to the one here in dispute. But the court argued from the certainty of a covenant of the present kind to the covenant there in question. Stating it as an established proposition that a court of equity would hear evidence and fix the amount of the rent, in a case where the amount for the renewal term is left to be determined by the valuation of third parties, the Supreme Court, passing over the later cases from Vesey, jr., presented to its consideration, sanctioned the doctrine of Sir William Grant in *Hall* v. *Warren*, which has been quoted above. Wherever a rule is laid down which may operate as a rule of property, the courts ought not to depart from that rule without very strong reasons. It is believed that there are many leases with covenants similar to that contained in the present.

The cases of *Biddle* v. *Ramsey*, 52 Mo. 153, and *Hug* v. *Van Burkleo*, 58 Mo. 202, are not in conflict with the recent cases which we have cited. As has been shown, a court of

equity does not enforce the contract as made by the parties, in such cases as the present. On the contrary, equity proceeds upon the basis that the contract, as made, cannot be enforced, and applies its own remedies to the violation of its rules. The relief given is of a purely equitable nature, and the ground on which the plaintiff is entitled to it is that, while he has a clear right of action, he has no adequate remedy at law. In the case of a covenant like that now in question, it is obvious that it is not of the essence of the contract that the valuation should be made by "disinterested freeholders" rather than by a court of equity. That is an immaterial detail, and a mode as effectual and fair may be found. Accordingly, the court should hear evidence, and upon the case as made, and upon the facts as ascertained from the evidence, specific performance may be decreed.

The decree of the court below is reversed and the cause remanded, to be proceeded with in accordance with this opinion. All the judges concur.