ANNIE E. BIDDLE, Appellant, *v.* THOMAS McDONOUGH, Respondent.

May 27, 1884.

LESSOR AND LESSEE — EQUITY — CONTRACTS — FAILURE OF APPAISERS TO AGREE. — Under a contract whereby, after the first term, the rental value of the demised premises shall be fixed by two disinterested appraisers, the repeated failure of the appraisers appointed by the parties does not furnish ground for a bill in equity to have the valuation fixed.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

T. T. GANTT, and A. J. F. LEE, JR., for the appellant.

JOHN N. STRAAT, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action in the nature of a suit in equity, in which the plaintiff seeks to have the court adjudge and decree what shall be deemed the value of a certain lot demised by the plaintiff to the defendant, upon which valuation the rent to be paid shall be computed under the terms of the lease. It was alleged and proved that in January, 1870, the plaintiff, being the owner of a lot of ground situated in block No. 558 in the city of St. Louis, fronting thirty feet on Seventh Street, and extending one hundred and twenty-five feet eastwardly to a public alley, entered into a lease with the defendant by which she demised the same to him for the term of thirty years from the first day of January, 1870, upon the following conditions in respect of the rent to be paid : " Yielding and paying the yearly rent of $245 for the first ten years, and for each succeeding period of ten years of said term the yearly rent of six per cent on the value of the ground, to be fixed at the commencement of each said period of ten years by the unanimous appraisement of disinterested men, one chosen by the lessor and the other by the. lessee ; and in case the appraisers do not agree, others to be chosen till an appraisement be made, as aforesaid ; and if such appraisement be delayed beyond rent day the lessee to pay on account at the rate of six per cent on the last valuation of the ground for city taxes, and the residue when the rent be fixed as aforesaid. And the lessee agrees to pay the rent by equal instalments on the second days of January and July in each year." The lessee also covenanted to pay general and special taxes during the term for which the premises were demised.

The plaintiff in her petition, after setting out the terms of the lease, makes the following allegations : " Plaintiff states that she did, on the last mentioned day, and on many times thereafter, and still is ready to do, everything on her part provided to be done on her part by said lease in order

to secure a proper appraisement of said property for said period as provided by said lease, in order that it might be properly determined what amount of rent should be due by defendant for said lot during said period ; but that said defendant has, contrary to his duty, to good faith, and to the spirit of said agreement, and with intent to deprive plaintiff of her just rights in said property, failed and refused, and still does fail and refuse, to appoint a disinterested person to make the appraisement of said lot as provided for by said lease, and as above set forth ; that instead of appointing such disinterested person, when requested by plaintiff so to do, defendant did, with the intent aforesaid, from time to time, appoint to make such appraisement on his part persons who were either interested in the making of such appraisement, or not competent to make the same justly and properly, and did instruct them not to agree to any award fixing said premises at its actual value.

" Plaintiff further states that she has several times appointed, as provided by said lease, a competent and disinterested person — each appointment being of a different person — to appraise said lot for her, and did, at the time of each of said appointments, request said defendant to appoint a person with like qualifications to appraise said lot for him ; but plaintiff says that in no instance was the person so by her appointed able to come to any agreement with any person appointed by said defendant, as above mentioned, for the reason that the appraisement made in every instance by every person so appointed by said defendant was incorrect, and this plaintiff would have been greatly injured if any of such appraisements had been agreed to by any person so appointed by her.

" Plaintiff further states that an appraisement of said lot can not be made in the manner contemplated by said lease ; that this plaintiff would be put to further great and useless charges and expense by any further attempt on her part to cause said lot to be appraised in the manner contemplated by said lease ; that she has been greatly injured by

reason of said appraisement not having been made, and that she will be further greatly injured if the making thereof be further delayed; because she avers that she is unable to determine what is the amount of rent due, or to become due, for said lot to plaintiff, or to collect the same; that by reason thereof she greatly fears said rent will be lost to her; that a very large sum, to wit, the sum of $1,000, is now due to her for said rent."

The defendant, in his answer, after admitting the making of the lease, denies these allegations; avers that he has paid the rent accrued under the lease from January 1, 1880, up to and including July 1, 1882; and further answering says, "that in every instance when requested by plaintiff to select an appraiser to ascertain and fix the value of said leased premises, he did select as his appraiser a disinterested and competent person to appraise said ground, and that the persons selected by plaintiff to appraise the same have been in each instance interested and incompetent persons, and that the failure upon the part of appraisers so selected to make a unanimous appraisement was in each instance the fault of plaintiff's appraisers, who were unwilling to appraise said ground at a fair and reasonable value."

At the hearing in the circuit court the plaintiff offered evidence to the effect that on the 12th of February, 1880, she notified the defendant that she had appointed Mr. E. A. Manny as her appraiser under the lease, and required him to appoint an appraiser to act with Mr. Manny in fixing the the value of the premises in accordance therewith. The defendant accordingly appointed Mr. P. F. Madden. These gentlemen met, viewed the premises, and could not agree; and, concluding that it was useless to confer any longer, separated. Mr. Manny valued the ground at $100 per front foot; Mr. Madden would not concede that it was worth more than $50 per front foot. There is a slight discrepancy on this point between the testimony of Mr. Manny and Mr. Madden; the former testifying to having valued

the ground at $100 per front foot, and that Mr. Madden would not agree to a valuation of more than half that sum; while Mr. Madden testified that Mr. Manny valued it at $110 per front foot, while he, Madden, valued it at from $50 to $55 per front foot. Mr. Manny testified that Mr. Madden said something about having instructions not to value the property above a certain figure; Mr. Madden, on the contrary, denies that he was under any instructions from the defendant. He says: "Mr. McDonough did not say a word to me as to how I should value it. I acted wholly on my own judgment. Before appraising the property I consulted records in the assessor's office to see if there had been any sales in that neighborhood. I did not say to Manny that under no circumstances would I go above $50 per foot. If he had given me good reason for going above $50 I would have done it."

These appraisers, having been unable to come to an agreement, the plaintiff, in July, 1882, sent another written notice to the defendant, informing him that she had appointed Mr. Ringrose J. Watson as her appraiser under the terms of the lease, and requiring him to appoint an appraiser on his part. He accordingly appointed John S. Costello. These two appraisers met and compared their views, with substantially the same result which had attended the conference of the two former appraisers — they could not agree. Mr. Watson was of opinion that the ground was worth $100 per front foot; Mr. Costello was of opinion that it was not worth more than $50 per front foot; and so this second effort at an appraisement failed. The plaintiff made no further effort to fix a valuation in the manner pointed out by the lease, but she has brought the present suit in equity, asking the circuit court to fix such valuation.

A good deal of conflicting evidence was introduced at the hearing, as to the value of the property. The plaintiff's evidence on this point of her case consisted of the testimony of several persons acquainted with the values of real estate

in that vicinity, who were of opinion that the ground was worth, at the time of the hearing, $100 per front foot. On behalf of the defendant, it was shown that the property was assessed for taxes at $45 per front foot; that it had depreciated very much since 1870, the population having changed for the worse since then ; and, generally, that the property was of a value ranging from $40 to $60 per front foot.

In the view which we take of the case, we are not called upon to make a finding of the facts upon this conflicting testimony. By the lease, the parties made a contract for themselves. The defendant stands ready and willing to perform it as made. This being so, we can not make another and a different contract for them, and then execute it for them by our own methods. By that instrument they agreed that the valuation for the purpose of computing the rent after the expiration of the first ten years of the term should be fixed " by the unanimous appraisement of disinterested men, one chosen by the lessor and the other chosen by the lessee." If their agreement had ended here, and if, upon an agreement so ending, the plaintiff had come into court and had shown that it was entirely impossible to fix any valuation in the manner thus agreed upon, then we should have to consider the question whether a court of equity would have the power to interpose, and to fix a valuation for them. But the agreement did not stop here. The very contingency which has happened, of the appraisers being unable to agree, was within the minds of the parties when they executed the lease ; and they provided in the instrument itself what the valuation should be in this contingency. This valuation was to be, not such a valuation as might be fixed by the circuit court upon a suit brought for the purpose of having the valuation fixed ; but it was to be " the last valuation of the ground for city taxes," and upon this valuation the rent was to be computed and paid, as an interim or provisional valuation, until the valuation

could be ascertained by appraisement; and the parties evidently contemplated the successive appointment of appraisers until an agreement as to the valuation should be arrived at. They could not have meant anything else when they inserted the following words into the lease : "And in case the appraisers do not agree, others to be chosen, till an appraisement be made, as aforesaid ; and if such appraisement be delayed beyond rent day, the lessor to pay on account at the rate of six per cent on the last valuation of the ground for city taxes, and the residue when the rent shall be fixed as aforesaid." Such being the agreement which the defendant has entered into, a court of equity clearly can not in the absence of fraud, or of bad faith on his part, or of a showing that it is entirely impossible to fix the valuation in the mode provided for in the instrument, interpose and compel him to pay rent upon a valuation fixed by a judge upon the testimony of witnesses. If it could do so under any circumstances, which we do not decide, it could not do so under the circumstances shown by this record ; for it is quite clear that the parties have not exhausted their efforts to fix a valuation by appraisement. But two efforts have been made, and the evidence entirely fails to sustain the charge in the petition of a want of good faith on the part of the defendant. The petition is drawn upon the view that the defendant was required, on his part, to appoint a disinterested and competent appraiser. The lease merely requires that the appraisers should be disinterested men. It does not require that they should be competent men. The law, no doubt, would raise an implication that they should be competent men ; and it might, perhaps, be conceded that the appointment of a person of known incompetency would not be an act of good faith on the part of the party making the appointment. But there is an entire want of evidence in this record that either Mr. Madden or Mr. Costello, the appraisers successively appointed by the defendant, was incompetent. It appears

that Mr. Madden had been a district assessor in St. Louis for nine years; that he knew the property in controversy, and that on one year it was in the district of which he was the assessor. The presumption from this evidence would be that he was well qualified to act as an appraiser under this lease. Mr. Costello had served for two years on the Mullanphy Board, and had been a member of the leasing committee of that board. He lived near the land in question. These facts would not show a want of competency on his part, but they would tend to show the reverse. There is absolutely no evidence tending to show that these appraisers were not disinterested men; and both of them in testifying denied in positive terms that they had been instructed what value to put upon the ground by the defendant, or that they had been influenced in their action by him. There is, therefore, an entire want of proof of bad faith on the part of the defendant in the matter of fixing a valuation of the property, as required by the terms of the lease. On the contrary, he stands before the court in the attitude of a party to a contract, ready and willing to carry out the contract as made. This being so, we can not, without disregarding the plainest principles, make a different contract for him, or compel him to execute this contract in a different manner from that provided by its terms.

None of the cases which have been cited by the learned counsel for the appellant at all impugn the views here expressed, or support the view on which the plaintiff's claim for relief proceeds. We have looked carefully into these cases, and into a number of others which bear upon the general subject. Conflicts of opinion, no doubt, appear in them; but none of them exhibit any conflict of opinion, so far as we can see, in respect of what it would be necessary to hold in order to support this action.

It is said that equity will compel the specific performance of a covenant to renew a lease. *Blackmore* v. *Boardman*, 28 Mo. 420; *Finney* v. *Cist*, 34 Mo. 303; *Garnhart* v.

*Finney*, 40 Mo. 449 ; *Arnot* v. *Alexander*, 44 Mo. 25.  It has also been held that where there is in a lease a covenant to renew upon the lessee agreeing to pay as much rent as any other responsible party will agree to pay, the lessee can compel specific performance of the covenant by a decree for a renewal at a reasonable rental, which the court will ascertain by its own methods.  *Arnot* v. *Alexander*, *supra*.  But the principle of these cases does not apply to the case before us, because this is not a suit to enforce specific performance of a covenant to renew, nor is it a case in which there is a covenant to renew without any provision as to how the rental value on the renewal is to be ascertained.

Another class of cases, which have some bearing upon the question before us, is those where leases have contained covenants to renew at a rental value to be fixed by appraisers ; or for the purchase of improvements by the lessor, at a valuation to be fixed in the same way.  In these cases, the courts have held that equity will not decree specific performance of so much of the contract as requires the appointment of appraisers ; proceeding upon the general rule that an agreement to arbitrate is not enforceable in equity.  But while they have so held, they have, in some cases, regarded the agreement of the landlord to renew or to purchase the tenant's improvements at the end of the term, as the substantial contract and the manner of fixing the rental value or the value of the improvements as a mere incident ;  and they have, accordingly, held that a court of equity would enforce the performance of the principal contract, not *modo et forma*, but fixing the valuation according to its own methods.  *Strohmaier* v. *Zeppenfeld*, 3 Mo. App. 429 ; *Biddle* v. *Ramsey*, 52 Mo. 153 ; *Hug* v. *Van Burkleo*, 58 Mo. 202 ; *Black* v. *Rogers*, 75 Mo. 441, 449 ; *Tscheider* v. *Biddle*, 4 Dill. 55.  These cases form an exception to the rule that an unexecuted contract of sale which provides that the price is to be fixed by arbitrators

or appraisers is incapable of enforcement. *City of St. Louis* v. *St. ,Louis Gas-light Co.*, 70 Mo. 69, 101, 125. In cases like the one just cited, the reasons given by the courts for refusing to decree specific performance of the contract of sale, after ascertaining the price to be paid by their own methods, is that to do so would " bind the parties contrary to their agreement." *Agar* v. *Macklew*, 2 Sim. & Stu. 418. It would be "making a contract for the parties and then enforcing it." *Northfleet* v. *Southall*, 9 Murph. 190. It " would not be to enforce an existing contract of the parties, but to make one for them." *City of Providence* v. *St. John's Lodge*, 2 R. I. 46. " All the authorities," said Lord Cranworth, " enunciate the proposition in the strongest language that, when the parties have stipulated that the price should be ascertained by arbitration, * * * if the arbitration does not proceed and the price be so ascertained according to the mode in which the parties have stipulated, this court has no right to make a different contract than the parties had entered into, and ascertain the price for them in some different mode." *Morgan* v. *Millman*, 3 De G. M. & G. 24. Other decisions reviewed by our supreme court in the case of *City of St. Louis* v. *St. Louis Gas-light Co.* (*supra*), might be cumulated to the same effect; but it would be useless to cite them, because that decision reviewed the whole learning on the subject, and pointed out the distinction to be found in the decisions between enforcing a specific performance of unexcuted contracts of sale where the price is to be fixed by arbitrators or appraisers, and enforcing the specific performance of covenants to renew leases or to purchase the tenant's improvements, where the price is to be fixed in like manner. In the former case the courts refuse to enforce the contract because they have found real or imaginary difficulties in the way of doing so, and, it being entirely unexecuted, no great injury accrues from refusing to enforce it. But, in the latter class of cases, they enforce the

covenants by their own methods, because they are supposed to have entered into the original consideration of the lease ; and, the tenant having paid rent during the term, or built the improvements, the contract on his part has been executed so far as to entitle him to a completion of its performance on the part of the latter; and to allow him under such circumstances to repudiate it, would work a great hardship upon the tenant.

But no case of this class has been cited to us where the court has enforced the performance of such a contract where the party proceeded against stood by, ready and willing to perform it according to its terms. All the cases in this state where such contracts have been enforced, have been, in this regard, essentially different from the case at bar. In *Strohmaier* v. *Zeppenfeld* (3 Mo. App .429), the lessor refused to perform the covenant to renew ; and it was held that, while equity would not enforce so much of the covenant as provided for the appointment of appraisers, yet by its own methods, it would, upon the hearing of evidence, ascertain what would be the reasonable rental value, and, upon this basis, decree performance. In *Arnot* v. *Alexander* (44 Mo. 25), the lessor also refused to renew, and it was held that specific performance of the covenant to renew would be decreed, the court ascertaining from evidence, what would be a fair rental value. In *Biddle* v. *Ramsey* (52 Mo. 153), the covenant in the lease was that, at the end of the term the lessor and lessee should each appoint an assessor, and that these two assessors should appoint a third ; that the three should unanimously assess the value of the improvements and of the yearly rental; and that the lessor should then have the privilege of buying the improvements, or should grant a renewal of the lease at the rental so fixed, with the covenants of the old lease. It appeared that the lessee had always appointed partial assessors, so that no unanimous decision could be obtained, and had occupied the premises for a number of years since the expira-

tion of the original lease, without paying rent. It was held that the lessor might maintain a suit in equity for the purpose of having the value of the rental and of the buildings judicially decreed according to the true intent and meaning of the lease ; and to be allowed the option reserved to him by the lease, and for an accounting with the lessee. "This," said Sherwood, J., "is a case which, in a peculiar and eminent degree, combines all the essentials of equitable jurisdiction ; here, an account is necessary to be taken for rents which have accrued during a long period of years ; an estimate required of improvements made ; a multiplicity of suits to be avoided; no plain, adequate, and complete remedy at law ; and finally, the sinister designs of fraud to defeat. In *Hug* v. *Van Burkleo* (58 Mo. 202 ), it is evident from the opinion that a lessor had refused performance of the terms of a lease in respect of purchasing improvements at the close of the term ; and it was held that equity would grant relief, though a decree appointing arbitrators was reversed. In *Black* v. *Rogers* (75 Mo. 441), the chief matter in dispute was a boundary line. The parties had entered into an agreement settling this line, which agreement provided for the purchase of a small strip of land and a hedge, by one party from the other, at a valuation to be made by arbitrators to be selected by the parties. One of the parties refused to select an arbitrator ; the court appointed a commissioner to discharge the duties of arbitrator under the agreement. The supreme court affirmed the judgment.

It will be perceived that in every one of the foregoing cases, one of the parties to the agreement had either refused to perform it according to its terms, or had fraudulently obstructed its performance. Neither of these things has happened in the present case. The defendant has not fraudulently obstructed the fixing of the valuation by appraisers, but he has met the plaintiff at each request by the appointment of a disinterested and competent appraiser.

The only ground on which the relief is really claimed, then, is narrowed down to this: that the parties have made a contract, the performance of which, according to its terms, is impracticable. We do not see that they have done this. We are quite clear that the impracticability of arriving at a valuation in the mode pointed out by the lease is not shown by merely showing two unsuccessful efforts. Whether, in the event that it should clearly appear to be impossible for the parties to arrive at a valuation in the mode prescribed by the lease, a court of equity could interpose and fix a valuation for them, we do not now decide. I am strongly inclined to the opinion that, as long as the defendant, in good faith stands ready to perform his contract, a court of equity can not take its execution away from the tribunal fixed by the agreement of the parties, and that, in case of an entire failure so to fix the valuation, the interim valuation provided for on the basis of the assessment for taxes, will become the permanent valuation. But on this point I am not authorized to speak for the court. What the court decides is that a state of facts has not as yet been shown which entitles the plaintiff to the relief prayed for.

We are very clear that the circuit court was right in dismissing the bill, and its judgment is accordingly affirmed. All the judges concur.