

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

GREEN STREET 2900 INVESTORS, LLC,   )    No. ED110459

         )

      Respondent,   )    Appeal from the Circuit Court of

         )    the City of St. Louis

vs.          )

         )    Honorable Jason M. Sengheiser

THE ST. LOUIS WOODWORKS, INC.,   )

         )

      Appellant.   )    Filed: August 30, 2022

## Introduction

St. Louis Woodworks ("Appellant") appeals the trial court's entry of summary judgment for Green Street 2900 Investors, LLC ("Respondent") in an unlawful detainer action. Appellant raises five Points on appeal. In Point I, Appellant argues the trial court erred in failing to grant a stay in a separate action for specific performance. In Point II, Appellant argues the trial court erred in granting summary judgment because Appellant was lawfully in possession of the subject property under a properly executed option to renew the lease. In Point III, Appellant argues the trial court erred in granting summary judgment because Appellant raised genuine issues of material fact, namely the right to immediate possession and Respondent's good faith. In Point IV, Appellant argues the trial court erred in denying Appellant's request for discovery. In Point

V, Appellant argues summary judgment was granted in error if we determine Appellant's option to renew was ambiguous.

We affirm.

## Factual and Procedural Background

Appellant has leased space to operate its business at 500 Prospect Avenue since 2003. The original lease was set to expire in 2008 but provided a pair of five-year renewal options. The first renewal option set base rent at $5,750.00 per month. The second renewal option provided the monthly rate would be at "market rent," defined as "the lesser of rent quoted to prospective tenants within six (6) months prior to the expiration of the Lease term or rent paid by other tenants for comparable space within the surrounding area." The original lease instructed "Landlord shall provide Tenant with its estimate of the 'Market Rent' at lease [sic] five (5) months prior to the expiration of the first option term and both parties shall work in good faith to negotiate a mutually agreeable market rent." The lease continued "this option must be exercised no later than three (3) months before the expiration" of the lease term, and Appellant must be "in full compliance with all terms and conditions" of the lease.

The lease has been amended several times. In 2013, the lease was amended the fourth time. The fourth amendment provided the lease would expire October 31, 2020, and stated Appellant had an option to renew for a five-year or seven-year term ending in 2025 or 2027, respectively. The amendment did not mention a "market rent" calculation as in the original lease. Instead, it provided "the rate shall be at the current market rate as *negotiated and agreed* between Landlord and Tenant." Emphasis added. The amendment provided "words and phrases having defined meanings in the Lease shall have the same respective meanings" in the amendment

2

unless otherwise defined and "all of the terms and conditions of the Lease shall remain unaltered and in full force and effect" unless "expressly modified" by the amendment.

On February 5, 2020, Appellant notified Respondent of its intention to exercise the option to renew through 2027 at $2.00 per square foot. Respondent acknowledged Appellant's "intent" to renew and responded with a $6.00 per square foot counteroffer. Respondent added "the actual exercise of the option and renewal" required compliance with the lease and alleged Appellant was in violation by "using space that is not subject to any lease agreement." Appellant requested documentation supporting Respondent's $6.00 per square foot counteroffer, to which Respondent replied with a list of "comparable" rental rates. Appellant contends it did not see Respondent's letter until the letter was filed as an exhibit attached to Respondent's motion for summary judgment.

On October 26, 2020, Respondent demanded Appellant vacate the premises by November 10, 2020. Appellant sued for specific performance and declaratory judgment. On January 6, 2021, Respondent filed this unlawful detainer suit. In the specific performance suit, the trial court denied Appellant's motion for a stay of this unlawful detainer action. The specific performance action is still pending and is not the subject of this appeal. In this unlawful detainer action, the trial court denied Appellant's motion for discovery, granted Respondent's motion for summary judgment, and awarded possession and damages to Respondent. In its amended order and judgment, the trial court found the uncontroverted facts demonstrate the parties did not agree to a new lease rate as required by the fourth amendment's option to renew and the lease therefore terminated on October 31, 2020, after which Appellant became a holdover tenant. The trial court found Appellant's good faith arguments are not cognizable in an unlawful detainer action.

3

Appellant's specific performance suit has not been consolidated with Respondent's unlawful detainer action, from which Appellant appeals.

This appeal follows.

## Standard of Review

Unlawful detainer appeals are reviewed under the same standard as other court-tried civil cases. *Goser v. Boyer*, 633 S.W.3d 482, 485 (Mo. App. E.D. 2021). We review the grant of summary judgment *de novo. Green v. Fotoohighiam,* 606 S.W.3d 113, 115 (Mo. banc 2020), *reh'g denied* (Sept. 29, 2020) (citing *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452–53 (Mo. banc 2011)). Summary judgment is only proper if the moving party establishes there is no genuine issue as to the material facts and the movant is entitled to judgment as a matter of law. *Id.* We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* We apply the same criteria as the trial court but can affirm the grant of summary judgment on a different basis than that put forward and by any theory supported by the record. *Id.*; *Septagon Constr. Co. Inc.-Columbia v. Indus. Dev. Auth. of City of Moberly*, 521 S.W.3d 616, 622 (Mo. App. W.D. 2017) (citing *Mo. Bankers Assoc., Inc. v. St. Louis Co.*, 448 S.W.3d 267, 270–71 (Mo. banc 2014)). We review challenges to a denial of a motion for discovery for an abuse of discretion resulting in fundamental unfairness. *State v. Mauchenheimer*, 342 S.W.3d 894, 896 (Mo. App. W.D. 2011) (citing *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002)).

## Discussion

### Point I: Appellant's Motion for a Stay

Appellant argues the trial court erred in granting summary judgment because it failed to grant Appellant a stay of the instant unlawful detainer action while Appellant's separate action

for specific performance was pending. Appellant argues it followed the instruction of the Missouri Supreme Court to raise issues which are not cognizable in an unlawful detainer action in a separate action for specific performance, then seek a stay of the unlawful detainer action. *Wells Fargo Bank, NA v. Smith*, 392 S.W.3d 446, 461 (Mo. banc 2013). Appellant's Reply Brief emphasizes the instruction to seek a stay of the unlawful detainer action "in that separate case," meaning the specific performance action. *Id.* Appellant cites *Vatterott v. Kay* to argue this procedure makes "good common sense" because the result of a specific performance action may affect the right to possession in an unlawful detainer action. 672 S.W.2d 733, 735 (Mo. App. E.D. 1984). Appellant argues "its leasehold defenses," including Respondent's alleged bad faith, were properly raised in the unlawful detainer suit because the defenses were evidence it exercised an option to renew. *Henze v. Shell Oil Co.*, 758 S.W.2d 93, 98 (Mo. App. E.D. 1988). "If" the trial court correctly found these claims were not cognizable, Appellant argues this case should have been stayed pending the outcome of the specific performance action.

Respondent argues we lack authority to review Point I because it concerns an order issued in a case which is not the case before this court.[1] Respondent notes Appellant has not provided authority empowering this Court to review orders issued in an action separate from the one before us. *Farinella v. Croft*, 922 S.W.2d 755 (Mo. banc 1996) (where a statute does not provide a right to appeal, no right exists). Respondent also argues the denial of the stay in the specific performance action is not reviewable because it is not a final judgment and that case is still pending. *Columbia Mut. Ins. Co. v. Epstein*, 200 S.W.3d 547, 549 (Mo. App. E.D. 2006) ("A final judgment is a prerequisite for appellate review[.]"). As to the merits of Appellant's argument, Respondent argues a stay is a matter of judicial discretion and Appellant provided no authority suggesting reversal is appropriate here. Respondent also argues Appellant's good faith

---

[1] The order denying the stay was issued in the specific performance action.

5

argument is an equitable defense which is not cognizable in this unlawful detainer action. *Wells Fargo Bank, NA*, 392 S.W.3d at 454.

We lack authority to review Point I. Appellant's appeal is taken from an unlawful detainer action captioned 2122-AC00113, but Point I seeks review of an order issued in the separate declaratory judgment action captioned 2022-CC10192. Appellant's notice of appeal indicates its appeal is from the unlawful detainer action. The description notes the pendency of an unnamed "related case," but refers to the unlawful detainer action as "this" case. The trial court found this case was not consolidated with the separate suit and the record supports its conclusion.

This Court's authority must be set out by statute. *Dreppard v. Dreppard*, 211 S.W.3d 620, 623 (Mo. App. E.D. 2007). Rule 84.04(a)(2) instructs Appellant's Brief shall contain a "concise statement of the grounds on which jurisdiction of the review court is invoked,"[2] but Appellant failed to provide authority suggesting we can review a case other than the one from which an appeal has been taken. A deficient jurisdictional statement prevents review. *In re Marriage of Shumpert*, 144 S.W.3d 317, 319 (Mo. App. E.D. 2004). Appellant has also provided nothing suggesting the denial of the stay was a final judgment permitting appellate review. *Columbia Mut. Ins. Co.*, 200 S.W.3d at 549.

Point I is denied.

Points II & III: Respondent's Good Faith and Right to Immediate Possession[3]

1. *Respondent's Right to Immediate Possession*

Appellant argues the trial court erred in granting Respondent's motion for summary judgment because a genuine issue of fact exists whether Appellant was lawfully in possession of

---

[2] All Rule citations are to the Missouri Supreme Court Rules (2022), unless otherwise indicated.
[3] Points II & III are substantially similar and share many of the same arguments and applicable law. To avoid confusion and repetition, we have combined the two Points in one discussion.

the property following its execution of a valid and enforceable option to renew. Appellant argues it is "undisputed" it exercised the option to renew according to its terms by timely notifying Respondent of its intent to renew, which was "all [it] needed to do." Appellant argues, under the terms of the original lease, Appellant's action should have resulted in a renewal at the "market rate," meaning "rent paid by other tenants for comparable space within the surrounding area." Appellant argues Respondent's counteroffer "acknowledged Appellant's renewal" and "recognized" Appellant would lawfully possess the property until 2027.[4] Appellant argues evidence it properly exercised the option to renew is probative of the right to immediate possession, and the right to immediate possession of the property was a genuine issue of material fact that should have prevented summary judgment. *Henze*, 758 S.W.2d at 98.

Appellant argues the use of "shall" in the fourth amendment providing Appellant "shall have the option to renew" was stronger than the language of the original lease and "clearly" entitled Appellant to renew the lease. *Edwards v. City of Ellisville*, 426 S.W.3d 644, 664 (Mo. App. E.D. 2013) (holding the use of "shall" means a directive is mandatory). Appellant argues we must give force to the intent of the parties, which was for Appellant to remain in possession at the market rate. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). Appellant argues the renewal terms of the original lease and fourth amendment should be read together, because "express" modification only occurs by affirmative statement, such as "hereby amended," not by mere inconsistency between provisions. Appellant argues "if" we are persuaded the fourth amendment's rate provision modified that of the original lease, we should find the renewal period was "to commence immediately upon the expiration" of the lease, so price was to be fixed "only after" the renewal period commenced.

---

[4] This is a misrepresentation. Respondent acknowledged Appellant's *intent* to renew and responded with a counteroffer.

In addition to arguing it exercised the option to renew, Appellant also argues the option is enforceable. Appellant cites *Arnot v. Alexander* for the proposition a lease renewal term may be enforceable without a price term. 44 Mo. 25, 29 (Mo. 1869).[5] Appellant likewise cites *K.C. Air Cargo Servs., Inc. v. City of Kansas City* for the proposition a "fair rental rate" term can support an enforceable agreement. 523 S.W.3d 1, 3–6 (Mo. App. W.D. 2017). Appellant argues modern courts are not inclined to view indefiniteness as a bar to enforceability and the parties' failure to agree on a negotiated rate should not prevent them from exercising the option to renew. *Tureman v. Altman*, 239 S.W.2d 304 (Mo. banc 1951); *Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 229 (Mo. App. W.D. 2002); *Coale v. Hilles*, 976 S.W.2d 61, 64 (Mo. App. S.D. 1998); *Powell v. Kennedy*, 463 S.W.2d 802, 803 (Mo. banc 1971); *Biddle v. McDonough*, 15 Mo. App. 532 (Mo. App. E.D. 1884).[6] Appellant argues the rental term was "sufficiently definite to be enforceable" because the lease defined "market rate/rent" and "[t]he terms 'Market Rent' from the original lease and 'market rate' in the Fourth Amendment are interchangeable."

Respondent argues summary judgment was proper because a negotiated rate was a condition precedent of the option to renew, and it is undisputed in the summary judgment record the parties did not agree to a renewal rate. Respondent also argues the option to renew in the fourth amendment was unenforceable and the parties' failure to reach an enforceable option agreement entitles Respondent to immediate possession as a matter of law. *Wells Fargo Bank, N.A.*, 392 S.W.3d at 456. Respondent argues the language of the fourth amendment controls: "During each renewal period [. . .] the rate shall be at the then current market rate as *negotiated and agreed* between Landlord and Tenant." Emphasis added. Respondent argues this language supersedes the provision of the original lease providing for a "market rent" calculation in its

---

[5] This is not an unlawful detainer action.
[6] None of these cases are unlawful detainer cases.

second option to renew because "when two writings are inconsistent, the contract last executed, if valid, will supersede the first to the extent that the two are inconsistent." *Arizon Structures Worldwide, LLC v. Glob. Blue Techs.-Cameron, LLC*, 481 S.W.3d 542, 547 (Mo. App. E.D. 2015) (quoting *Berry v. Crouse*, 376 S.W.2d 107, 112 (Mo. 1964)). Respondent argues the difference between the original lease and the fourth amendment represents an express modification, meaning the original lease's "market rent" provision is no longer applicable. Respondent argues we may not look beyond the amendment's plain language and there is no basis for the court or a jury to fill in terms for an agreement never reached. *Stephens v. Brekke*, 977 S.W.2d 87, 94 (Mo. App. S.D. 1998); *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. App. E.D. 2000). Because the option to renew left the rental rate to future determination, Respondent argues the option was only an unenforceable "agreement to agree" that failed to specify its terms "with such definiteness and certainty" that the court could "determine what has been agreed on." *Hartbarger v. Burdeau Real Estate Co.*, 741 S.W.2d 309, 310–11 (Mo. App. E.D. 1987); *Rosenberg v. Gas Serv. Co.*, 363 S.W.2d 20, 26 (Mo. App. W.D. 1962). Respondent argues a lease renewal option is strictly construed against the party seeking to exercise it. *Krall v. Light*, 210 S.W.2d 739, 746 (Mo. App. W.D. 1948). Finally, Respondent argues Appellant's cases are distinguishable and do not support its arguments.

A person is guilty of "unlawful detainer" if they "willfully and without force hold[] over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to the person . . . ." § 534.030.1.[7] Unlawful detainer actions are limited in scope and "summary in nature." *Wells Fargo Bank*, N.A., 392 S.W.3d at 453. The sole issue is the right to immediate possession of real property. *Goser*, 633 S.W.3d at 486 (citing *Fed. Nat. Mortg. Ass'n. v. Wilson*, 409 S.W.3d 490, 495 (Mo. App. E.D. 2013)). The "merits of the title" are not

---

[7] All statutory references are to the Revised Statutes of Missouri (2021), unless otherwise indicated.

assessed and equitable defenses and counterclaims are not cognizable. § 534.210; *Wells Fargo Bank, N.A.*, 392 S.W.3d at 454. Unlawful detainer actions were created to operate quickly while avoiding the forceful and violent nature of property owners using self-help to enforce their right to possession of real property. *Id.* at 453 (citing *Krevet v. Meyer*, 24 Mo. 107, 110–11 (Mo. banc 1856)). This history is reflected in section 534.200: "The complainant shall not be compelled to make further proof of the forcible entry or detainer than that he was lawfully possessed of the premises, and that the defendant unlawfully entered into and detained or unlawfully detained the same."

It is undisputed Respondent would be entitled to possession after October 31, 2020 absent a lease renewal. Therefore, the only issue we consider is whether Appellant exercised an enforceable option to renew the lease, extending its right to possession. We hold it did not.

Respondent's right to summary judgment is found in the plain language of the contract. The fourth amendment provided the only way the parties could renew the lease was to agree to a negotiated rate. *Stephens*, 977 S.W.2d at 94. This method is exclusive of any method provided in the original lease under the fourth amendment's terms: "all of the terms and conditions of the Lease shall remain unaltered and in full force and effect" unless "expressly modified" by the amendment. An amendment modifies a contract when it replaces a term of an original contract. *Riggins v. City of Kansas City*, 351 S.W.3d 742, 747 (Mo. App. W.D. 2011).[8] By providing future rent would be as negotiated between the parties, the fourth amendment expressly modified the original lease's provision for a lease renewal at its "market rent" calculation. In arguing the fourth amendment's negotiated rate term did not expressly modify the original lease's "market rent" provision, Appellant urges us to read the lease and fourth amendment's price mechanisms

---

[8] This holding is consistent with the dictionary definition of "expressly modified." "Expressly" means "in direct or unmistakable terms." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 803 (2002). "Modify" means "to make a basic or important change." *Id.* at 1452.

together to give effect to the full contract and avoid rendering "some of the provisions without function or sense." But this reading would itself negate the fourth amendment's express modification provision. *Dunn Indus. Grp., Inc.*, 112 S.W.3d at 428. It is a court's duty to give effect to the plain and ordinary meaning of contractual terms when possible. *Ferguson v. Gateway Ins. Co.*, 151 S.W.3d 911, 913 (Mo. App. W.D. 2004). Our reading comports with a general rule of contract interpretation: when two contractual provisions conflict, we give effect to the most recent provision. *Arizon Structures Worldwide, LLC*, 481 S.W.3d at 547 (quoting *Berry*, 376 S.W.2d at 112).

Having determined the fourth amendment's renewal option was exclusive of any other renewal procedure, we hold this option is unenforceable. Real estate contracts require price as an essential term. *Ebert v. Ebert*, 627 S.W.3d 571, 588 (Mo. App. E.D. 2021) (citing *Barkho v. Ready*, 523 S.W.3d 37, 43–44 (Mo. App. W.D. 2017)). Options to renew leases are usually strictly construed against the person exercising them. *Davison v. Rodes*, 299 S.W.2d 591, 593 (Mo. App. W.D. 1956) (citing *Krall*, 210 S.W.2d at 746). They will be held void for lack of certainty. *Krall*, 210 S.W.2d at 746. In its Reply Brief, Appellant argues the renewal rate was to be determined *after* execution of the option to renew. Such an agreement, lacking a price term, is unenforceable. Contracts which leave price to future determination are routinely found unenforceable as either agreements to agree or illusory promises. *Bengimi Allied Disposal, Inc. v. Bob's Home Serv., Inc.*, 595 S.W.2d 417, 419–20 (Mo. App. E.D. 1980). The fourth amendment's statement Appellant "shall" have the option to renew indicates the intent to create an option but does not affect the enforceability of its terms. Because the lease expired on October 31, 2020, and there was no enforceable option to renew, Respondent is entitled to immediate possession as a matter of law. *Wells Fargo Bank, N.A.*, 392 S.W.3d at 456.

11

Despite Appellant's contention the parties' failure to agree "simply means a judge, jury or some third party, will resolve the amount of rent due," the trial court appropriately declined to set a rental rate on its own. Appellant's position *Arnot* and *K.C. Air Cargo Servs.* instruct a court or jury to resolve disputes over the rental rate "in a specific performance or declaratory judgment lawsuit" is not persuasive because Appellant appeals from an unlawful detainer action. 44 Mo. 25; 523 S.W.3d 1. A court's enforcement of indefinite lease terms at equity does not suggest courts can do the same in an unlawful detainer action and Appellant has provided no binding authority empowering a court or jury to define indefinite terms in an unlawful detainer action. *Arnot*, 44 Mo. at 27; *see also Biddle*, 15 Mo. App. at 540 (describing *Arnot* ascertaining rent for specific performance). Notably, *K.C. Air Cargo Servs.* provides an open-ended renewal term based on comparable rentals and competing offers (much like the second option in the original lease in this case) may be enforceable, but does not provide the same for options which leave price to future negotiation more generally. 523 S.W.3d at 3. Appellant's description of a general trend toward enforcement of indefinite terms relies on *Schell v. LifeMark Hosps. of Mo.*, an employment contract case that based enforcement on the contract's "definite formula" to "reasonably fix damages." 92 S.W.3d 222, 228 (Mo. App. W.D. 2002). The fourth amendment provided no similar formula.[9]

Although courts, where possible, will enforce contracts despite indefiniteness, "the long-recognized general rule in Missouri is that a contract must include a definite price to be binding."

---

[9] Other cases cited by Appellant (which do not concern unlawful detainer) are similarly distinguishable for the relative definiteness of the contracts they addressed. *Coale* addressed a contract which provided for a price determined by independent appraisal. 976 S.W.2d at 67. *Powell* concerned a contract providing for "fair value *as may be determined by competent outside certified accountants.*" 463 S.W.2d at 803 (emphasis added). *Tureman* provided a court at equity may set a lease's rental rate where "no one questions" the continued validity of a partially performed lease but arbitration fails to fix an *increase* in rent. 239 S.W.2d at 307. *Biddle* reviewed a lease providing a fallback provision setting rent based on a city tax assessment if the parties could not agree. 15 Mo. App. at 533. Even ignoring that these cases were in equity, they do not authorize courts to set rental rates which were to be reached by future negotiations.

*Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 204 (Mo. App. W.D. 2006) (citing *Juengel Constr. Co. v. Mt. Etna, Inc*., 622 S.W.2d 510, 514 (Mo. App. E.D. 1981)). The essential terms of an agreement, including mutual assent and consideration, must be sufficiently definite to enable the court to give it an exact meaning. *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc*., 163 S.W.3d 472, 477 (Mo. App. W.D. 2005) (citing *Ketcherside v. McLane*, 118 S.W.3d 631, 636 (Mo. App. S.D. 2003)), *as modified* (May 31, 2005). There can be no contract if the essential terms thereof are reserved for the future determination of both parties. *Juengel Constr. Co*., 622 S.W.2d at 514 (citing *Brown v. Childers*, 254 S.W.2d 275, 281 (Mo. App. W.D. 1953)). Lease clauses "containing renewal covenants leaving the renewal rental for the future agreement of the parties are in general held unenforceable for indefiniteness and uncertainty." *Rosenberg*, 363 S.W.2d at 26. The fourth amendment's option to renew was unenforceable. The trial court correctly found there was no genuine issue of fact and Respondent was entitled to immediate possession as a matter of law.[10]

### 2. *Respondent's Good Faith*

Appellant argues the original lease's good faith requirement applies to the fourth amendment's option to renew and Respondent's good faith was a genuine question of material fact that should have prevented summary judgment. Appellant argues its expert established $2.00 per square foot as the market rate, and therefore Respondent's $6.00 per square foot counteroffer was "of course" not in good faith. Appellant argues Respondent's failure to act in good faith means Appellant was lawfully in possession. Appellant directs us to cases holding agreements to act in good faith are enforceable contracts and agreements to negotiate are not mere agreements

---

[10] The trial court granted summary judgment for Respondent because the parties did not agree to a negotiated rate. We hold the parties did not agree and the option to renew is unenforceable. Summary judgment can be affirmed under any appropriate theory supported by the record. *Septagon Constr. Co. Inc.-Columbia*, 521 S.W.3d at 622 (citing *Mo. Bankers Ass'n, Inc*., 448 S.W.3d at 270–71).

to agree: *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 130 (3d Cir. 1997); *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 74 (2d Cir. 1989); *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257–58 (2002).[11]

Respondent argues summary judgment was proper because the unenforceability of the fourth amendment's option to renew is the sole issue and entitles Respondent to immediate possession as a matter of law. *Wells Fargo Bank, N.A.*, 392 S.W.3d at 456. Respondent argues the original lease's good faith provision does not apply to the fourth amendment, but even if it did, Appellant's good faith argument is an equitable claim which cannot be raised in an unlawful detainer action. *Id.*

As held above, Respondent's right to immediate possession is dispositive. A material fact in summary judgment is one from which the right to judgment flows. *Soybean Merch. Council v. AgBorn Genetics, LLC*, 534 S.W.3d 822, 828 (Mo. App. W.D. 2017) (citing *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. banc 2014)). Appellant's bad faith argument does not present a genuine dispute of material fact because the fourth amendment's option to renew is not enforceable. Because no renewal occurred, Respondent was entitled to immediate possession after October 31, 2020. This is the only relevant issue in an unlawful detainer action. *Wells Fargo Bank*, N.A., 392 S.W.3d at 454. Appellant must raise any other claims in a separate action. *Id.* at 461. Appellant properly described (and apparently followed) the procedure of bringing equitable claims in another action and seeking a stay. *Id.* at 454 (citing *Morris*, 66 S.W.2d at 889). Appellant's separate action is still pending.

Points II & III are denied.

---

[11] These cases are from foreign jurisdictions and do not address unlawful detainer.

Point IV: Discovery

Appellant argues the trial court erred in denying its motion for discovery because discovery was "essential to Respondent's summary judgment motion," because it was necessary to determine how Respondent reached its $6.00 per square foot figure and whether Respondent acted in good faith. Appellant argues it could have defeated summary judgment by proving $2.00 per square foot was the "market rate" and Appellant was therefore in lawful possession of the property. Appellant notes trial courts have "discretion to grant or deny additional time to conduct discovery before ruling on summary judgment." *Traweek v. Smith*, 607 S.W.3d 779, 785 (Mo. App. W.D. 2020) (citing *Matysyuk v. Pantyukhin*, 595 S.W.3d 543, 547 (Mo. App. W.D. 2020)).

Respondent argues Appellant failed to make the two-part showing required to reverse summary judgment for a court's failure to permit pre-trial discovery: the discovery should have been permitted *and* it would have produced sufficient evidence to defeat the motion for summary judgment. *White v. City of Ladue*, 422 S.W.3d 439, 446 (Mo. App. E.D. 2013) (citing *Bost v. Clark*, 116 S.W.3d 667, 673 (Mo. App. W.D. 2003)). Respondent argues discovery would not have made a difference because the only issue in an unlawful detainer action is the right to immediate possession of the property and Appellant failed to properly exercise the option to renew. Respondent also argues Appellant failed to present the trial court with a proper Rule 74.04(f) affidavit requesting time for discovery.

Appellant's argument fails for the reasons discussed in Points II and III. The fourth amendment's option to renew is unenforceable and Respondent is entitled to immediate possession. Because an unlawful detainer action addresses only the right to immediate possession, Appellant's desire to assess good faith is irrelevant. *Wells Fargo Bank, NA*, 392 S.W.3d at 454. It is also irrelevant whether Appellant is correct $2.00 per square foot was the

true "market rate." The fourth amendment defined market rate as "negotiated and agreed between" the parties, not a figure that could be determined unilaterally. The fourth amendment's option to renew is unenforceable for leaving price to future negotiation in this manner. *Rosenberg*, 363 S.W.2d at 26. Discovery would not have made a difference because Respondent is entitled to judgment as a matter of law. *White*, 422 S.W.3d at 446 (citing *Bost*, 116 S.W.3d at 673).

Point IV is denied.

Point V: Lease Ambiguity

Appellant argues, alternatively, "if" we determine "it is unclear whether the option terms of the original Lease are incorporated into the fourth amendment, then the contract is ambiguous, which also makes summary judgment improper without discovery."[12] Appellant argues a contract is ambiguous when a conflict between two provisions in it make it susceptible of two interpretations. *Yerington v. La-Z-Boy, Inc.*, 124 S.W.3d 517, 520 (Mo. App. S.D. 2004). Appellant argues if a contract is ambiguous, extrinsic evidence is appropriate and resolving the ambiguity is a question of fact. *Thomas v. B.K.S. Dev. Corp.*, 77 S.W.3d 53, 59 (Mo. App. E.D. 2002). Appellant does not affirmatively argue the lease or amendment are ambiguous. Appellant instead argues if the lease is ambiguous, "Respondent's motion for summary judgment should have been denied because the interpretation of the contract is a question of disputed fact that cannot be resolved by the Court and should not be resolved without the benefit of discovery." Appellant contends this argument was preserved because it was raised to the trial court.

---

[12] This is the only description of the supposed ambiguity set forth in Appellant's Brief. In its Reply Brief, Appellant argues "the terms of the Lease *were* ambiguous." Emphasis added. But Appellant did not make this affirmative argument in Appellant's Brief. Appellate courts are generally "precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995) (quoting *P & K Heating & Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.*, 877 S.W.2d 121, 124 (Mo. App. E.D. 1994)).

Respondent argues this argument was not preserved because it was not argued to the trial court. Respondent also argues this argument is defective because Appellant does not affirmatively argue the lease was ambiguous, nor point to any specific ambiguity. *McClain v. Dep't of Corr.*, 8 S.W.3d 210, 211 (Mo. App. W.D. 1999). Respondent argues this is not a proper allegation of error because the trial court did not find ambiguity in the incorporation of the original lease option terms to the fourth amendment. Respondent argues the lack of this specific ruling preserves nothing for appellate review. *Manner v. H.E.T., Inc.*, 739 S.W.2d 724, 727 (Mo. App. E.D. 1987). Respondent argues the lease is not ambiguous and the trial court properly applied the fourth amendment requiring the parties to agree on a rental rate to renew the lease. *Stephens*, 977 S.W.2d at 94.

Point V presents nothing for our review. A point relied on must "identify the trial court ruling or action that the appellant challenges." Rule 84.04(d)(1)(A). Appellant raises only a hypothetical and fails to identify a challenged action. The claim is also not preserved. In claiming the argument was raised before the trial court, Appellant's Brief cites "E.g. D18-42" in the record.[13] The documents referenced in this citation include twenty-one different exhibits. There is no indication what we are expected to find in them. Rule 84.04(e) requires "factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." We insist on briefing which is at least minimally compliant with the rules to assure the Court does not assume the role of advocate for a party by attempting to develop an appellate argument the party has failed to set forth itself. *Rainey v. SSPS, Inc.*, 259 S.W.3d 603, 605 (Mo. App. W.D. 2008).

Point V is denied.

---

[13] The applicable section of the Reply Brief provides no citation at all.

## Conclusion

For the reasons stated above, we affirm.

_____

Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

18